**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **MORPHO KOMODO LLC,** | **Civil Action No. 2:15-cv-01100-JRG** |
| Plaintiff, | **CONSOLIDATED LEAD CASE** |
| v. | **JURY TRIAL DEMANDED** |
| **BLU PRODUCTS, INC.,** *et al.*, | |
| Defendants. | |

**PLAINTIFF MORPHO KOMODO LLC'S
OPENING CLAIM CONSTRUCTION BRIEF**

i

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     SUMMARY OF THE PATENTS-IN-SUIT ........................................................ 2

III.    CLAIM CONSTRUCTION LEGAL PRINCIPLES ........................................... 3

   A.   Claim Terms Should Be Given Their Ordinary Meaning ................................... 3

   B.   Limitations From The Specification Should Not Be Imported Into The ............. 3

   Claims ........................................................................................................................ 3

   C.   Not Every Term Needs Construction ................................................................. 4

IV.     AGREED CONSTRUCTIONS ........................................................................... 4

V.      THE DISPUTED CLAIM TERMS .................................................................... 5

   A.   Terms Previously Construed by This Court ....................................................... 5

      1.   *"signal"* .......................................................................................................... 5

      2.   *"Measurable Variable Input"* ..................................................................... 7

   B.   Terms Previously Agreed Upon in the Prior Litigation between Parties to the Prior Litigation and
   Adopted by the Court .................................................................................................. 9

      1.   *"signature"* ................................................................................................... 9

      2.   *"Input Device" & "User-Selected device/user-selected input device"* ..................... 10

   C.   New Disputed Claim Terns ............................................................................... 11

      1.   *"computer"* ................................................................................................. 11

   D.   THE "WHEREIN TERMS" OF THE '725 AND '078 PATENTS ARE NOT INDEFINITE ....... 13

      1.   *"wherein creating said signature using recorded signals from a plurality of signal types"* ...... 13

      2.   *"wherein passively terminating said recording"* .................................................. 14

      3.   *"wherein recording a plurality of signal types for at least one user-selected device"* ............... 15

      4.   *"wherein said recording comprises a plurality of user-selected devices"* ................. 17

VI.     CONCLUSION ................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

*Biosig Instruments, Inc. v. Nautilus, Inc.*
715 F.3d 891 (Fed. Cir. 2013) ................................................................. 13

*Epistar Corp. v. ITC*
566 F.3d 1321 (Fed. Cir. 2009) ................................................................. 3

*Finjan, Inc. v. Secure Computing Corp.*
626 F.3d 1197 (Fed. Cir. 2010) ................................................................. 4

*JVW Enters. v. Interact Accessories, Inc.*
424 F.3d 1324 (Fed. Cir. 2005) ................................................................. 3

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*
244 F.3d 1365 (Fed. Cir. 2001) ................................................................. 4

*Netflix, Inc. v. Blockbuster, Inc.*
477 F. Supp. 2d 1063 (N.D. Cal. 2007) ................................................................. 4

*O2 Micro Int'l v. Beyond Innovation Tech.*
521 F.3d 1351 (Fed. Cir. 2008) ................................................................. 4

*Omega Engineering, Inc v. Raytek Corp.*
334 F.3d 1314 (Fed. Cir. 2003) ................................................................. 3

*Phillips v. AWH Corp.*
415 F.3d 1303 (Fed. Cir. 2005) ................................................................. 3

*Teleflex, Inc. v. Ficosa N. Am. Corp.*
299 F.3d 1313 (Fed. Cir. 2002) ................................................................. 3, 6

*United States Surgical Corp. v. Ethicon, Inc.*
103 F.3d 1554 (Fed. Cir. 1997) ................................................................. 4

*Wellman, Inc. v. Eastman Chem. Co.*
642 F.3d 1355 (Fed. Cir. 2011) ................................................................. 13

Plaintiff Morpho Komodo LLC ("Plaintiff") submits this opening claim construction brief setting forth its proposed constructions of the disputed terms and phrases of the asserted claims of U.S. Patent Nos. 7,725,725 (the "'725 Patent" – attached as Ex. A), U.S. Patent No. 7,350,078 (the "'078 Patent" – attached as Ex. B), and U.S. Patent No. 8,429,415 (the "'415 Patent" – attached as Ex. C) (collectively, the "Patents-in-Suit") and refuting the proposed constructions set forth by Defendants BLU Products Inc., and Dell Inc., (collectively, "Defendants").

## I.       INTRODUCTION

The Patents-in-Suit were previously litigated in a number of cases by the prior owner in this Court.  *See Tierra Intelectual Borinquen, Inc., v. HTC Corporation. et al*, Case No. 2:13-CV-39-JRG (Consolidated Lead Case).  As part of those litigations, this Court construed certain terms of the Patents-in-Suit.  [*Id.* Dkt. No. 110 attached as Ex. D]

Plaintiff's proposed constructions of the disputed claim terms find broad support in the intrinsic record and are consistent with how the terms would have been understood by persons of ordinary skill in the art at the time of the invention and should, therefore, be adopted.  Plaintiff's proposed construction are also consistent with this Court's prior claim construction order.

In contrast, Defendants insist on burdening the court with contrived claims of indefiniteness, even regarding terms with plain English meanings that are easily understood in view of the specification.  Defendants' goal is clear: they hope that this Court will disregard several canons of claim construction, import unwarranted limitations onto the claims, or err on the issue of indefiniteness.  Ultimately, Defendants ask this Court to construe several claim terms in a manner that is incompatible with the intrinsic record in an attempt to insulate themselves from infringement.

In contrast, Plaintiff submits that a straightforward application of the tenets of claims construction will assist the Court in arriving at proper constructions, the ones proffered by Plaintiff.

In this case, there is only one new term that require a construction in order to be understandable to a jury.  For the previously construed and agreed upon terms, Plaintiff submits that the Court should adopt the prior constructions.  Finally, for the "wherein" terms – as described below - Plaintiff submits that the terms are not indefinite and construction is not necessary.

## II.    SUMMARY OF THE PATENTS-IN-SUIT

Plaintiff has accused Defendants of infringing multiple claims in the '727, '078, and '415 Patents.  Claim terms from the Patents-in-Suit were previously construed by this Court and as such the Court is likely well familiar with the Patents-in-Suit.

The '078 Patent is entitled "User selection of computer login." It was filed on March 4, 2002. The '078 Patent is in the field of computer login by user-determined submission.  The '078 Patent application claims priority to U.S. Provisional Application No. 60/286,457 filed on April 26, 2001, and is therefore entitled to the priority date of at least April 26, 2001.

The '725 Patent is entitled "User-Selectable Signatures". This Patent is in the field of computer login by user-determined submission.  The '725 Patent was filed on December 23, 2006. This Patent is a continuation of the '078 Patent, which is a non-provisional filing of Provisional Application No. 60/286,457, filed on April 26, 2001. As such, the asserted claims of the '725 Patent are entitled to the priority date of at least April 26, 2001.

The '415 Patent is entitled "User-selectable signatures." It was filed on April 13, 2010. The '415 Patent is also in the field of computer login by user-determined submission.  The '415 Patent is a continuation of Application No. 11/615,966, filed on December 23, 2006, now the '725 Patent, which is a continuation of Application No. 10/090,520, filed on March 4, 2002, now the '078 Patent, which claims priority to U.S. Provisional Application No. 60/286,457 filed on April 26, 2001. As such, the asserted claims of the '415 Patent are entitled to a priority date of at least April 26, 2001.

2

## III.    CLAIM CONSTRUCTION LEGAL PRINCIPLES

### A.    Claim Terms Should Be Given Their Ordinary Meaning

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotes omitted).  Other evidence may be useful to put claim language in context, but the "claim construction inquiry ... begins and ends in all cases with the actual words of the claim." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002).  There is "a heavy presumption that claim terms carry their *full* ordinary and customary meaning, unless [the accused infringer] can show the patentee expressly relinquished claim scope." *Epistar Corp. v. ITC*, 566 F.3d 1321, 1334 (Fed. Cir. 2009) (emphasis added). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. The task of comprehending the claims is not always difficult – it often "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

### B.    Limitations From The Specification Should Not Be Imported Into The Claims

The specification can shed light on the meaning of claim terms and should be analyzed during claim construction. *Phillips*, 415 F.3d at 1315.  But courts, without clear and unambiguous disclaimer, "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment." *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005).  Similarly, statements during patent prosecution do not limit the claims unless the statement is a "clear and unambiguous disavowal of claim scope." *Omega Engineering, Inc v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) ("[W]e have thus

3

consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope.").

### C.    Not Every Term Needs Construction

All words have definitions and may theoretically be defined.  This does not mean that all words need to be defined. *See, e.g., O2 Micro Int'l v. Beyond Innovation Tech.,* 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Finjan, Inc. v. Secure Computing Corp*., 626 F.3d 1197, 1207 (Fed. Cir. 2010) (upholding district court's rejection of defendant's proposed construction, and finding that no construction is necessary).  Simply put, claim construction is "not an obligatory exercise in redundancy." *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Where a term is used in accordance with its plain meaning, the court should not re-characterize it using different language. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) ("[T]he court properly instructed the jury that these terms should receive their ordinary meanings.").  When claim terms are clear on their face, and there is no *legitimate* dispute regarding their meaning, no construction is necessary. *Netflix, Inc. v. Blockbuster, Inc.*, 477 F. Supp. 2d 1063, 1068 (N.D. Cal. 2007) ("A district court need not construe every single disputed word.").

## IV.    AGREED CONSTRUCTIONS

|  | TERM | AGREED CONSTRUCTION |
|---|---|---|
| 1. | **predetermined degree of exactness** | "a present allowable measure of deviation from the recorded signal passively terminating" |
| 2. | **designed tolerance of inexactness** | "a present allowable measure of deviation from the recorded signal passively terminating" |
| 3. | **passively terminating** | "stopping without over user action when a predetermined condition is met" |
| 4. | **signal type** | *Previously construed by this Court* |

|  |  | "a category of measurable variable input associated with at least one user-selectable input device." |
|---|---|---|

## V.     THE DISPUTED CLAIM TERMS

There are ten disputed terms in the asserted claims of the Patents-in-Suit.  Of the ten terms, two ("signal" and "measurable variable input") have been previously construed by this Court and the constructions were thoroughly explained in the Court's previous opinion.  *See* Ex. D at 8-23. Two additional terms ("signature" and "input device") were agreed upon by the parties in the previous litigation.  *Id.*  The remaining terms include four "wherein terms" which Defendants allege are indefinite and two additional terms ("computer" and "user-selected [input] device") which are easily understood by a lay person and, therefore do not require construction.

### A.     Terms Previously Construed by This Court

#### 1.     *"signal"*

| Plaintiff | Defendants |
|---|---|
| *This term was previously construed by this Court*<br><br>"a set of related software-recognizable data which results from user input via an input device" | "a set of related software-recognizable data **from a single transmission** from an input device" |

Defendants' proposed construction completely ignores this Court's prior claim construction order, attempting to insert an additional limitation to the Court's construction as set forth in its carefully considered 6 page discussion.  *See* Ex. D at 8-13.  As support, Defendants' attempt to read in a single line from the specification while improperly ignoring the surrounding language found in the specification.  Defendants' proposed construction should be rejected and the Court should maintain its previous construction for the term "signal."

In the asserted claims, the term "signal" is found in claims 1, 2, 4 of the '078 Patent; claims

1, 2, 10, 15, 17 of the '725 Patent; and claim 1 of the '415 Patent.  As discussed in this Court's

order, Claim 1 of the '078 Patent is representative and recites:

> 1. A computer-implemented method for creating a signature for subsequent
> authentication comprising:
> > indicating to a user commencement of signature input recording;
> > *recording user input signals* by type from at least one user-selected device
> among a plurality of selectable user input devices,
> > *wherein a signal comprises a set of related software-recognizable data of the
> same type received from at least one input device*, and
> > wherein at least one user-selectable input device affords recording a plurality
> of *signal* types, and
> > wherein a *signal* type comprises a category, among a plurality of possible
> categories, of measurable variable input associated with at least one user-selectable
> input device;
> > *terminating said recording*;
> > creating a signature based at least in part upon said recording; and
> > storing said signature.

*See* '078 Patent, Claim 1; *See also* Ex. D at 10.  When construing a term that is already fully described

in the claims, additional construction of the term is unnecessary.  *See Teleflex, Inc.*, 299 F.3d at

1324 ("claim construction inquiry ... begins and ends in all cases with the actual words of the

claim.")  From representative Claim 1, the Court found that "signal" must be "a set of related

software-recognizable data" and result from "user input via an input device."

Consistent with the prior claim construction, Plaintiff submits that the claim language itself

already defines the term "signal."  First, Defendants' proposed construction seeks to read out the

"*user input*" requirement.  It's explicit from the actual claim language that a signal "results from

user input" and as such Defendants' attempt to read out this language should be rejected.

Second, Defendants attempt to import the limitation "*from a single transmission*" from the

language in the specification while ignoring the relevant explanations in the specification.  The

specification states that "a signal is a set of related software-recognizable data from a single

transmission," but **goes on to further state** that "a plurality of signals may emanate from a single

transmission" *and* that "a transmission is user input into the computer via one or more input devices." '078 Patent, 3:16-17, 29-31.  When read in its entirety, this discussion does not limit a signal to only come from a single transmission.  Notwithstanding the fact that the claims already define the term "signal," Defendants' proposed construction takes merely one sentence in the patent specification and imports it into the claim.  In short, construction of a term already defined in the claims and previously construed is unnecessary, and the insertion of a confusing phrase not found in the claim language should be rejected as improper.

As such, Plaintiff submits that prior construction of "signal" is proper and should reject Defendants' proposed construction.

2. <em><u>"Measurable Variable Input"</u></em>

| Plaintiff | Defendants |
|---|---|
| *This term was previously construed by this Court*<br><br>"an input quantity that can vary and that must be measured, as opposed to an input that is distinctly identifiable" | "an input quantity that can **gradually** vary and that must be measured, as opposed to an input that is **discretely** identifiable" |

Defendants' proposed construction, again, completely ignores this Court's prior claim construction order, attempting to distort the Court's carefully construction discussed in nearly 11 pages.  Ex. D at 13-23.  Defendants seek to import the limitation "gradually" into the Court's previous construction and replace the phrase "distinctly identifiable" with "discretely identifiable."

First, with respect to the addition of the word "gradually," Defendants attempt to place an improper time restriction on the term "measurable variable input."  This limitation is not supported by the intrinsic or extrinsic record.  A similar time constraint of "continuous" was proposed by Toshiba, but ultimately dropped by Toshiba in its Response Brief.  *Tierra*, Dkt. No. 93 – Attached as Ex. E at 10-11; *Tierra*, Dkt. No. 96 – Attached as Ex. F at 21.  Likewise, the limitation "gradually" should be rejected because the specification does not require input to *gradually* vary.

7

According to the specification, transmissions to a computing device via one or more input devices result in a signal. *See* '078 Patent 3:16-19.  Signals resulting in this fashion, however, may comprise any kind of signal that is "measurable" from the input device.  The specification discloses various examples of "measurable" signals. In a keyboard, for example, typing a word may yield signals for the entered keys and the timing between keystrokes. *See* '078 Patent 3:32-33. In that case, the keys and timing between keystrokes are both "measurable" because they can be measured and converted into signals. The keys and timing between keystrokes are also "variable" because different characters may be used, and the timing of the keystrokes may not be consistent.  The specification also offers examples where a mouse is the input device. In that case, mouse movements of the cursor may result in signals for locations, velocities, duration, and shapes. *See* '078 Patent 3:34-37.  "Other types of transmissions are possible with different input devices, such as, for example, voice transmission if the computer is equipped with a microphone and speakers." '078 Patent 3:21-24.  The specifications never require that the speed or significance at which the input quantity must vary, but simply that the input quantity can vary.  As such, Defendants' gratuitous "gradually" limitation should be rejected.

 Second, with respect to the differences between "distinctly identifiable" and "discretely identifiable," Plaintiff submits that the term "distinctly identifiable" is correct.  In this Court's prior construction, it stated "'measured characteristics' are different from distinctly identifiable inputs such as key characters." Ex. D at 22 citing '078 Patent at 1:21-28.  "Distinctly identifiable" refers to an input that can be distinguishable without measurement.  On the other hand, the term "discretely identifiable" is confusing as the term "discrete" has a specific meaning within the context of computing.  It refers to a "computer component… that is distinct and treated as an

individual unit…"[1]   Furthermore, this exact added limitation of "discrete" was proposed by Defendant Toshiba in the prior litigation but was rejected by this Court. Ex. D at 21-22.

As such, Plaintiff submits that this Court should adopt its previous construction and reject Defendants' proposed construction

### B.   Terms Previously Agreed Upon in the Prior Litigation between Parties to the Prior Litigation and Adopted by the Court

   1.   *"signature"*

| Plaintiff | Defendants |
|---|---|
| *Previously agreed upon by Tierra, HTC, Toshiba and Adopted by this Court*<br><br>"at least one transmission intended as a security precaution to preclude unauthorized access" | "a transmission intended as a security precaution to preclude unauthorized access to a **computer**" |

Plaintiff and Defendants' proposed constructions differ by two distinct limitations. Plaintiff's construction makes clear that a signature can be more than merely a single transmission by the language "at least one transmission."  Defendant seeks to improperly insert the limitation of "computer" to signature.  The '708 Patent is unambiguous as it clearly and literally defines the term with no qualifications.  "A signature is at least one transmission intended as a security precaution to preclude unauthorized access." '708 Patent, 3:65-66.

First, with respect to the phrase "at least one transmission," in the prior litigation all the parties agreed that the term "signature" is properly construed to include "at least one transmission." Ex. D at 7.  The parties agreed to this construction as support in this is found in the specification. The specification discloses an embodiment where a "submission [may] solely comprise [a] signature." '708 Patent, 3:11-12.  And a "[s]ubmission comprises one or more transmissions intended for authenticating access to a computer or network of computers." '708 Patent, 3:1-3.

---

[1] http://www.webopedia.com/TERM/D/discrete.html

Furthermore the patent suggests that different types of transmissions can be used for a signature such as "mouse movements or clicks, keyboard entry, or combinations thereof." *See* '708 Patent, 3:20-21. Plaintiff's proposed construction ensures consistency with the specification while Defendants' construction would eliminate a preferred embodiment.

Second, Defendant attempts to impose a limitation that a signature "precludes unauthorized access to a *computer.*" However, nowhere in the claims is such a requirement found. The claims recite only that "a signature" is created "for subsequent authentication" (e.g. precluding unauthorized access).

In view of the unambiguous language where the patentee acted as his own lexicographer and defined signature as "at least one transmission intended as a security precaution to preclude unauthorized access" and the additional support in the specification and claims, the Court should adopt Plaintiff's (and other reasonable parties' prior) construction of the term "signature."

2.    *"Input Device" & "User-Selected device/user-selected input device"*

| Plaintiff | Defendants |
|---|---|
| *Input Device*<br><br>*Previously agreed upon between Tierra, HTC, Toshiba and Adopted by this Court*<br><br>"a device by which a user enters input into a computer system" | *Input Device*<br>"a device by which a user enters **explicit** input into a computer system" |
| *User-Selected device/user-selected input device*<br>"device selected by the user by which the user enters input into a computer system" | *User-Selected device/user-selected input device*<br>"an input device selected by the user" |

Both Plaintiff and Defendants propose similar constructions with one significant difference, Defendants seek to insert the extraneous limitation of "explicit" into their proposed construction. The addition of "explicit" should be rejected. Plaintiff proposes a construction

consistent with the intrinsic record and consistent with the term "input device" previously agreed upon between Tierra, HTC, and Toshiba.

The term "input device" is a plain and ordinary word that does not need additional construction.  As such, Plaintiff's proposed construction tracks the readily understood definition, "a device by which a user enters input into a computer system."  This is supported by specification of the '078 Patent which states "input devices 106, examples of which include but are not exclusive to: a keyboard; one or more pointing devices, such as a mouse; or a biometric device, such as a fingerprint reader."  '078 Patent, 2:36-39.  A keyboard, a mouse, and a biometric device are exemplary devices by which a user enters input into a computer system.

On the other hand, Defendants' addition of the term "explicit" is unclear and ambiguous. It injects an unnecessary limitation to an already understood term of "input device."  As such, Defendants' construction should be rejected.

### C.    NEW DISPUTED CLAIM TERNS

1.    *computer*

| Plaintiff | Defendants |
|---|---|
| "a device having a processor, a memory, one or more devices with retentions medium(s), and having the capacity to receive input from one or more input devices" | "a laptop or desktop computer" |

Plaintiff's propose a construction of "computer" consistent with the normal understanding of a computer as used with respect to the Patents-in-Suit while Defendants improperly attempt to limit "computer" to a "laptop or desktop computer."

First, Defendants' circular construction does not even define the term "computer" as the same term is used its proposed construction.  Instead, Defendants' construction merely poses to

change the literal word "*computer*" to "***a laptop or desktop* computer**."  This is a blatant attempt to manufacture a non-infringement argument and should be rejected.

Although, the term computer is likely understood by a lay jury, Plaintiff's proposed construction of "computer" includes the addition of "having the capacity to receive input from one or more input devices."  It's well understood that a general computer must have a "processor, a memory, one or more devices with retentions medium(s)" (e.g. RAM, magnetic storage, etc.). However, in the Patents-in-Suit, each computer must also have the "capacity to receive input from one or more devices" as the claims require the operation of the computer with one or more input devices.  This is demonstrated by Figure 1 which includes 106 Input Device(s) which includes 107 Pointing device, 108 Keyboard, and 109 Biometric Device.



**FIGURE 1**

This proposed limitation is to articulate that the ability to receive input from one or more input devices is necessary to create a signature used in precluding unauthorized access as described in the Patents in Suit.

12

Because a computer in the context of the '708 Patent should not be limited to "a laptop or desktop" and because it must receive input from one or more input devices to operate according to the invention, this Court should adopt Plaintiff's proposed construction.

**D.    THE "WHEREIN TERMS" OF THE '725 AND '078 PATENTS ARE NOT INDEFINITE**

There are three disputed claim terms at issue for the asserted claims of the '725 Patent and one disputed claim term at issue for the asserted claims of the '078 Patent.  Plaintiff contends that construction for these four terms are unnecessary as they can be easily understood in view of the entirety of the patents.  However, Plaintiff has also proposed four constructions consistent with the plain and ordinary meaning of the four terms if additional explanation to a lay jury is necessary. Defendants' have asserted that all four terms are indefinite.  A Court should only construe a term to be indefinite when the language is "insolubly ambiguous" and incapable of construction. *Biosig Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891, 898 (Fed. Cir. 2013); *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1366 (Fed. Cir. 2011) ("an accused infringer must demonstrate by clear and convincing evidence that one skilled in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art.").   As discussed below, Defendants cannot show by clear and convincing evidence that the disputed "wherein terms" are indefinite.

1.    *"wherein creating said signature using recorded signals from a plurality of signal types"*

| Plaintiff | Defendants |
|---|---|
| No Construction Necessary<br><br>Or in the alternative:<br><br>"wherein creating said signature based at least in part upon at least a portion of said stored recording comprises using recorded signals from a plurality of signal types." | Indefinite |

When viewed in the context of the '725 Patent specification, the claim term "wherein creating said signature using recorded signals from a plurality of signal types" would be easily understood by a lay person.  The specification states:



**FIGURE 10**

> "a user may determine as part of account creation which signal types are to be considered for validation of subsequent submissions. This is an editing process that may be construed as part of account input. For example, after submission termination, having recorded signals for account input, as depicted in the example of FIG. 10, the user may select, via a checkbox controls as show, which signal types of the transmission being depicted in FIG. 9 are to be considered for the transmission being recorded."

'725 Patent, 5:8-17.  And as shown in Fig. 10 above, a signature may be created from multiple signal types.  As such, the term "wherein creating said signature using recorded signals from a plurality of signal types" should be easily understood and no construction is necessary.

Should the Court be inclined to construe the term for additional clarity, Plaintiff submits that a construction which follows plain and ordinary meaning should be "wherein creating said signature based at least in part upon at least a portion of said stored recording comprises using recorded signals from a plurality of signal types."

**2.**      *"wherein passively terminating said recording"*

14

| Plaintiff | Defendants |
|---|---|
| No Construction Necessary<br><br>Or in the alternative:<br><br>"wherein terminating said recording comprises passively terminating said recording" | indefinite |

Similarly, when viewed in the context of the '725 Patent specification, the claim term "wherein passively terminating said recording" would be easily understood by a lay person. The specification provides examples of "passively terminating said recording:"

> a computer login may comprise any user-determined submission, including a plurality of transmissions for which submission may be passively terminated. *See* '078 Patent at Col. 1, 44-48.

> "For example, changing from cursor/mouse movement to mouse button clicking may be considered a change in signal type and hence a possible basis for passive termination. Biometric transmission is typically passively terminated…" *See Id.* at Col. 4, 40-46.

> "termination of identification or signature may occurring using a number of protocols: passively by a predetermined or user-selected number of transmissions; final transmission by a particular type of action; active termination by a final gesture, such a key or button press; passive termination by time out of a predetermined duration or sufficiently of data collection." *See Id.* at 4, 41-53.

As such, the '725 Patent gives context to the term "wherein passively terminating said recording" and should be easily understood and no construction is necessary.

Should the Court be inclined to construe the term for grammatical purposes, Plaintiff submits that a construction which follows plain and ordinary meaning should be "wherein terminating said recording comprises passively terminating said recording."

> **3.**   *"wherein recording a plurality of signal types for at least one user-selected device"*

| Plaintiff | Defendants |
|---|---|
| No Construction Necessary<br><br>Or in the alternative:<br><br>"wherein recording user input signals by type from at least one user-selected device comprises recording a plurality of signal types for at least one user-selected device." | indefinite |

Similarly to the term "wherein creating said signature using recorded signals from a plurality of signal types," when viewed in the context of the '725 Patent specification, the claim term "wherein recording a plurality of signal types for at least one user-selected device" would be easily understood by a lay person.

The '725 Patent specification and figures recite:



**FIGURE 10**

"a user may determine as part of account creation which signal types are to be considered for validation of subsequent submissions. This is an editing process that may be construed as part of account input. For example, after submission termination, having recorded signals for account input, as depicted in the example of FIG. 10, the user may select, via a checkbox controls as show, which signal types of the transmission being depicted in FIG. 9 are to be considered for the transmission being recorded."

'725 Patent, 5:8-17.  And as shown in Fig. 10 above, recording user input signals by type from at least one user-selected device includes being recorded from multiple signal types.  As such, the

16

term "wherein recording a plurality of signal types for at least one user-selected device" should

be easily understood and no construction is necessary.

Should the Court be inclined to construe the term for additional clarity, Plaintiff submits

that a construction which follows plain and ordinary meaning should be "wherein recording user

input signals by type from at least one user-selected device comprises recording a plurality of

signal types for at least one user-selected device."

4.        *"wherein said recording comprises a plurality of user-selected devices"*

| **Plaintiff** | **Defendants** |
|---|---|
| No Construction Necessary<br><br>Or in the alternative:<br><br>"wherein said recording comprises signal types from a plurality of user-selected devices" | indefinite |

Similarly to the term "wherein creating said signature using recorded signals from a

plurality of signal types," when viewed in the context of the '725 Patent specification, the claim

term "wherein said recording comprises a plurality of user-selected devices" would be easily

understood by a lay person.

The specification states that "computer login may comprise any user-determined

submission, including a plurality of transmissions for which submission may be passively

terminated." '078 Patent at Col. 1, 44-47. The specification then goes on to give a specific

examples of a plurality of user selected devices for input.  *See* '078 Patent at Col. 3, 30-36. The

specification also states "a user may determine as part of account creation which signal types are

to be considered for validation of subsequent submissions." *See* '078 Patent, Col. 5, 1-19.

As such, the term "wherein said recording comprises a plurality of user-selected devices"

should be easily understood and no construction is necessary.

Should the Court be inclined to construe the term for additional clarity, Plaintiff submits that a construction which follows plain and ordinary meaning should be "wherein said recording comprises signal types from a plurality of user-selected devices."

## VI.    CONCLUSION

The ordinary meaning of the claim terms controls.  The terms are easily understood claim language and solidly supported by the intrinsic evidence. Defendant's proposed constructions improperly, and repeatedly, attempt to restrict claim terms, add requirements that are not supported by the intrinsic evidence, and import exemplary embodiments into the clear claims.   These attempts should be rejected.

Dated: March 29, 2016                                      Respectfully submitted,

By: /s/ *Hao Ni*
Hao Ni
Texas Bar No. 24047205
hni@nilawfirm.com
Timothy T. Wang
Texas Bar No. 24067927
twang@nilawfirm.com
Neal G. Massand
Texas Bar No. 24039038
nmassand@nilawfirm.com
Stevenson Moore V
Texas Bar No. 24076573
smoore@nilawfirm.com
Krystal L. McCool
Texas Bar No. 24082185
kgibbens@nilawfirm.com

Ni, Wang & Associates, PLLC
8140 Walnut Hill Ln., Ste. 500
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

**ATTORNEYS FOR PLAINTIFF
MORPHO KOMODO LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's ECF system per Local Rule CV-5(a)(3).

<u>*/s/ Hao Ni*</u>
Hao Ni

19