**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **MORPHO KOMODO LLC,** | § | **C.A. No.: 2:15-CV-01100-JRG-RSP** |
| | § | **(LEAD CASE)** |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **BLU PRODUCTS INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

**DEFENDANTS DELL, BLU PRODUCTS, INFOSONICS, AND PCS WIRELESS'S
RESPONSE TO MORPHO KOMODO'S OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I.     Introduction ............................................................................................................... 1

II.    Background ................................................................................................................ 2

    1.   The Method Claimed in the 078 and 725 Patents ......................................... 3

    2.   The Device Claimed in the 415 Patent ......................................................... 4

III.   Legal Standard .......................................................................................................... 5

IV.    Agreed Constructions ............................................................................................... 6

V.     Disputed Constructions ............................................................................................ 6

    1.   The Inventor Expressly Stated that Hand-held and Embedded Computing Devices Are Not "Computers" .............................................................................................. 6

    2.   A "Signal" May Only Come From a Single Transmission Received from an Input Device ....................................................................................................................... 10

    3.   "Measurable Variable Input" Must Vary by Gradations Rather than Simply Being a Selection from a Set of Options ......................................................................... 13

    4.   A "Signature" Only Protects Access to a Computer, Not Access to Anything .... 16

    5.   The Inventor Was Clear that the "Input Device" Was Only Used to Enter Explicit User Input, not Implicit or Passive Input ............................................................. 18

    6.   "User-Selected [Input] Device" is an Easily Understood Term in View of the Construction of Input Device ............................................................................... 19

VI.    The "Wherein" Terms Are Indefinite ...................................................................... 20

    1.   "wherein recording a plurality of signal types for at least one user-selected device", "wherein creating said signature using recorded signals from a plurality of signal types," and "wherein passively terminating said recording" ................ 20

    2.   wherein said recording comprises a plurality of user-selected devices ............... 27

VII.   Conclusion ............................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                                                Page(s)

*Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*,
   750 F.2d 1569 (Fed. Cir. 1984)........................................................................23

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
   783 F.3d 1374 (Fed. Cir. 2015)........................................................................22

*Chef America, Inc. v. Lamb-Weston, Inc*.,
   358 F. 3d 1371 (Fed. Cir. 2004)..................................................................28, 29

*Endo Pharm. Inc. v. Watson Labs., Inc.*,
   No. 2:13-CV-192-JRG, 2014 U.S. Dist. LEXIS 84804 (E.D. Tex. June 23,
   2014) ......................................................................................................................5

*Ex parte Davis*,
   80 USPQ 448 (Bd. App. 1948) ........................................................................23

*Fuji Photo Film Co. v. Int'l Trade Comm'n*,
   386 F.3d 1095 (Fed.Cir.2004)..........................................................................17

*Genentech, Inc. v. Chiron Corp.*,
   112 F.3d 495, 42 USPQ2d 1608 (Fed. Cir. 1997) .................................................23

*Georgia-Pacific Corp. v. U.S. Gypsum Co.*,
   195 F.3d 1322 (Fed. Cir. 1999)........................................................................23

*Hill–Rom Co. v. Kinetic Concepts, Inc.*,
   209 F.3d 1337 * (Fed. Cir. 2000).....................................................................16

*In re Gray*,
   53 F.2d 520 (CCPA 1931) ...............................................................................23

*In re* Herz,
   537 F.2d 549 (CCPA 1976) ...............................................................................23

*Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004)..........................................................................5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. __, 134 S. Ct. 2120, 189 L. Ed. 2d 37, 2014 U.S. LEXIS 3818
   (2014)......................................................................................................2, 5, 6, 22

*Novo Indus., LP v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed. Cir. 2003).........................................................................21

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005).........................................................................8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc).........................................................5

*Rhine v. Casio, Inc.*,
    183 F. 3d 1342(Fed. Cir. 1999).......................................................................28

*Tandon Corp. v. U.S. Int'l Trade Comm'n*,
    831 F.2d 1017 (Fed. Cir. 1987).........................................................................8

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*,
    222 F.3d 958 (Fed. Cir. 2000).........................................................................16

*Taylor v. Sturgell*,
    553 U.S. 880 (2008).......................................................................................10

*Texas Instruments, Inc. v. Linear Techs. Corp.*,
    182 F. Supp. 2d 580 (E.D. Tex. 2002).............................................................10

*Tierra Intelectual Borinquen, Inc., v. HTC Corporation. et al*,
    Case No. 2:13-cv-00039-JRG, Dkt. No. 110 at 10-11 (E.D. Tex. May 5, 2014) ...............1, 10

*Tivo, Inc. v. Verizon Commc'ns, Inc.*,
    No. 2:09-CV-257 (DF), 2012 WL 2499387 (E.D. Tex. Mar. 12, 2012) .................................12

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*,
    782 F.3d 671 (Fed. Cir. 2015).........................................................................17

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)...........................................................................5

## I.       INTRODUCTION

Defendants BLU Products, Inc.; Dell Inc.; InfoSonics Corporation; and PCS Wireless, LLC[1] (collectively "Defendants"[2]) hereby respond to Plaintiff Morpho Komodo's claim construction brief. In its opening brief, Plaintiff accuses Defendants of disregarding canons of claim construction, importing unwarranted limitations in the claims, and erring on the issue of indefiniteness. Plaintiff argues that the terms are consistent with how a person of ordinary skill in the art at the time of the invention would understand those terms despite presenting no extrinsic evidence, whether by expert testimony, dictionaries, or contemporary technical literature— meaning that any arguments about the understanding of a person of ordinary skill in the art is unsupported attorney argument. Nowhere in its opening brief does Plaintiff cite any prosecution history from any of the patents, ignoring relevant sections of that prosecution history that Defendants disclosed in the claim construction exchange process.

Plaintiff would have this Court expressly adopt all the claim constructions from the prior *Tierra Intelectual Borinquen* litigation despite the fact that Defendants are raising new issues that were not briefed or even raised in the prior litigation. Constructions that the previous parties agreed on and were adopted by the Court can hardly be considered settled legal conclusions. In any event, the law is settled that Defendants cannot be bound by a judgment from a different case, involving different defendants, with different disputes.

Furthermore, Plaintiff's arguments suffer from a number of fatal flaws. For example, Plaintiff inconsistently applies the teachings of the specification. For example, Plaintiff suggests that the term "computer" should be given its plain and ordinary meaning despite a clear

---

[1] Defendant PCS Wireless, Inc. is an incorrectly named entity not affiliated with Defendant PCS Wireless, LLC.
[2] In its opening brief, Plaintiff incorrectly refers to "Defendants" as only BLU Products Inc. and Dell Inc. All of the listed Defendants join in these claim construction positions.

disclaimer of certain types of equipment in the specification. In yet another example, Plaintiff suggests that despite being explicitly defined in the specification, the term "signal" should be given its plain and ordinary meaning. However, in another argument, Plaintiff suggests that a comparable sentence in the specification "clearly and literally defines the term [signature] with no qualifications." This cherry-picking results in inconsistent and incompatible definitions for a number of terms.

Plaintiff also appears to misunderstand a number of key features recited in the Asserted Patents or the import of its proposed constructions. This misunderstanding is demonstrated in a number of Plaintiff's arguments, including the term "measurable variable input." Lastly, Plaintiff applied the "insolubly ambiguous" standard for indefiniteness, which hasn't been the correct legal standard since the Supreme Court's *Nautilus* decision in 2014. For at least these reasons, Defendants request that their proposed constructions of the claim terms set forth below be adopted.

## II.     BACKGROUND

The Asserted Patents, U.S. Patent Nos. 7,350,078 (the "078 Patent"), 7,725,725 (the "725 Patent"), and 8,429,415 (the "415 Patent") (collectively the "Asserted Patents"), relate to signature creation and authentication for gaining secure access to a computing device. The asserted independent claims of the patents-in-suit cover two purported inventions: (1) a method or process for creating a signature for subsequent authentication (078 Patent, Claims 1 and 9; 725 Patent, Claims 1, 10, and 15) and (2) a computing device for providing secure access to the device (415 Patent, Claim 1). The 415 Patent is a continuation of the 725 Patent, which is a continuation of the 078 Patent. All three patents share an effectively identical specification.

### 1.   The Method Claimed in the 078 and 725 Patents

The 078 and 725 Patents describe a method for creating a signature that can be used for subsequent user authentication. The asserted independent claims focus solely on the creation of a signature—not the subsequent authentication. The asserted independent claims require a number of steps to create a signature, including: (1) recording user input signals by type from a user-selected input device; (2) creating the signature based on the recording; and (3) storing the signature.

The claims require the user to select an input device, through which a user enters input into the device. *See, e.g.*, 078 Patent, Claim 1 ("recording user input signals by type from at least one user-selected device among a plurality of selectable user input devices . . ."). The specification teaches that the user's input into the computer via an input device is a "transmission." 078 Patent at 3:16-19 ("A transmission 1 is user input into the computer 100 via one or more input devices 106, whereupon termination of transmission 1 is recognizable, and resulting in at least one signal 2."). The specification further teaches that there can be different types of transmissions from different user input devices, such as mouse movements or clicks, keyboard entry, voice transmissions, or a combination of any of the foregoing. *See* 078 Patent at 3:19-24.

A single transmission comprises one or more "signals." *See* 078 Patent at 3:16-19 ("A transmission 1 is user input into the computer 100 via one or more input devices 106, **whereupon termination of transmission 1 is recognizable**, and **resulting in at least one signal 2**.") (emphasis added); 3:29-30 ("A signal 2 is a set of related software-recognizable data **from a single transmission 1**.") (emphasis added). Similar to the types of transmissions, a signal can be of a variety of types. *See* 078 Patent at 3:30-32. For example, the termination of a keyboard entry transmission may result in the following signals: (1) entered keys or (2) the timing between

keystrokes, which are different signal types. *See* 078 Patent at 3:32-33. In addition, the termination of a mouse movement transmission may result in the signals of location, duration, velocity, or shape of the mouse movement, which are each distinct signal types. *See* 078 Patent at 3:34-37. Importantly, the specification makes clear that the transmission type and signal type are distinct, and, therefore, a signal type is not the same thing as a transmission type. *See* 078 Patent, 3:30-37; 44-47; 4:4-8; and FIG. 5.

After the termination of the user's intended input (i.e., at the termination of the transmission), the resulting signals are recorded by signal type. *See* 078 Patent, Claims 1 and 9; 725 Patent, Claims 1, 10, and 15. The signature is then created based in part on the recording. *See id*. Finally, the signature is stored. *See id.*

### 2.  The Device Claimed in the 415 Patent

The 415 Patent claims a computing device that comprises instructions for creating a reference signature and using that reference signature for subsequent user authentication. The computing device comprises two user-selectable input devices, data storage memory, and program memory. *See* 415 Patent, Claim 1. A first set of instructions stored in program memory allows a user to select a signal type associated with one of the user-selectable input devices. *See id*. A second set of instructions causes: (1) input data from the user-selected input device to be generated and recorded in data storage memory; (2) a reference signature to be created that comprises at least a portion of the input data that was recorded in data storage memory; and (3) a reference signature to be stored in data storage memory. *See id*. A third set of instructions stored in program memory retrieves the reference signature from the data storage memory and compares it to a subsequent signature submission signal to determine whether to grant access to the computing device. *See id*.

### III.    LEGAL STANDARD

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To ascertain the scope and meaning of the asserted claims, the court looks to the words of the claims themselves, the specification, the prosecution history, and, lastly, any relevant extrinsic evidence. *Id.* at 1315-17. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Id.* at 1312-13. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). A patentee may define terms, give a term a different meaning than it would otherwise possess, or disavow claim scope in the specification. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence," because it "provides evidence of how the PTO and the inventor understood the patent" and may disclose "whether the inventor limited the invention in the course of the prosecution, making the claim narrower than it otherwise would be." *Id.* at 1317 (citations omitted).

A claim is indefinite if the "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *See Endo Pharm. Inc. v. Watson Labs., Inc.*, No. 2:13-CV-192-JRG, 2014 U.S. Dist. LEXIS 84804 at *25-26 (E.D. Tex. June 23, 2014) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. __, 134 S. Ct. 2120, 189 L. Ed. 2d 37, 2014 U.S. LEXIS 3818, *6 (2014)). "It cannot be sufficient that a court can ascribe *some* meaning to a

patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters *post hoc*." *Nautilus*, 134 S. Ct. at 2130 (emphasis in original).

## IV.   AGREED CONSTRUCTIONS

As an initial matter, Plaintiff's table of agreed constructions on page 4 of its opening brief appears to contain inadvertent typographical errors. For the Court's convenience, Defendants present here the correct agreed constructions:

| Claim Term | Agreed Construction |
|---|---|
| predetermined degree of inexactness | a preset allowable measure of deviation from the recorded signal |
| designated tolerance of inexactness | a preset allowable measure of deviation from the recorded signal |
| passively terminating | stopping without overt user action when a predetermined condition is met |
| signal type | a category of measurable variable input associated with at least one user-selectable input device |

## V.   DISPUTED CONSTRUCTIONS

### 1.   The Inventor Expressly Stated that Hand-held and Embedded Computing Devices Are Not "Computers"

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| "a device having a processor, a memory, one or more devices with retentions [sic] medium(s), and having the capacity to receive input from one or more input devices" | "a laptop or desktop computer" |

In its briefing regarding the disputed term "computer," Plaintiff completely ignores the intrinsic evidence identified by Defendants in the joint claim construction statement. In any event, the specification and claims of the patents are abundantly clear that a "computer" is a narrower term than a "computing device"—not its equivalent—and that handheld and embedded devices are specifically excluded from the meaning of the term "computer." Plaintiff's proposed construction, "a device having a processor, a memory, one or more devices with retention

medium(s), and having the capacity to receive input from one or more input devices" would expressly encompass subject matter that the inventor did not regard as within the scope of the word "computer" as used in the specification.

The only evidence, intrinsic or extrinsic, that Plaintiff identified in the joint claim construction statement is the following language from the common specification of the Patents-in-Suit:

> **FIG. 1 is a block diagram of a desktop computer 100** which comprises a CPU 102; storage 103, which comprises memory 104 and optionally one or more devices with retention medium(s) 105 such as hard disks, diskettes, compact disks, or tape; an optional display device 101; and one or more input devices 106, examples of which include but are not exclusive to: a keyboard 108; one or more pointing devices 107, such as a mouse; or a biometric device 109, such as a fingerprint reader. The mouse is the most popular pointing device 107 for **desktop computers 100**. In the description below, mention of a mouse is meant to include pointing devices 107 of any type, including, for example, a pen or stylus used in computing devices where a user may "write" upon a screen. **The described software may be employed on such a computer 100.** As well, the software described may find application in other **computer-like devices** requiring secured access, **including hand-held or embedded devices**.

750 Patent at 2:31-48 (emphasis added). After describing the "desktop computer" of Figure 1, including the usual components of desktop computers, the inventor clearly stated that the invention may also find application "in other **computer-like devices** requiring secured access, **including hand-held or embedded devices.**" 078 Patent at 2:45-48 (emphasis added). The inventor stated that hand-held and embedded devices could use the software of his invention because they were *like* computers, but were *expressly* not computers. Plaintiff makes the mistake of assuming that any device that includes the features of Figure 1 is, by definition, a computer. This is the equivalent of assuming that all four-legged furry animals with tails and a head are, by definition, dogs after being presented with a diagram that illustrates a dog as having four legs, a tail, a head, and fur.

Indeed, the claims of the 415 Patent (which were prosecuted by the law firm that recently withdrew from the case) further clarify the distinction and show that Plaintiff's construction is no limitation at all. When "patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005). Claim 1 of the 415 Patent recites a "computing device" (*not* a computer) comprising, *inter alia*, a processor, a program memory, a data storage memory (e.g., a data retention medium), and two input devices—all of which, taken together, would comprise a "computer" under Plaintiff's proposed construction. Dependent claim 2 of the 415 Patent claims, "The computing device of claim 1, wherein the computing device comprises a computer." Under Plaintiff's proposed construction, claim 2 would be identical in scope to claim 1, which disregards the claim differentiation canon of claim construction. "There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant." *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987). Claim 3 depends on claim 2 and states the "computer" comprises a desktop computer. Claim 4 also depends on claim 1—not claim 2—and covers when the computing device of claim 1 "comprises a "hand-held computing device."

From the doctrine of claim differentiation (and the claim specification), we can conclude that the Euler diagram of computing devices and computers is as follows:



As described in the Patents-in-Suit, all computers are computing devices, but not all computing devices are computers. Furthermore, all desktop computers are computers,[3] while computers are separate and distinct from "hand-held" and "embedded" devices that may also implement the invention's software.

Plaintiff attempts to broadly define "computer" to include *any* device with a processor, memory, data storage, and an input device, including devices expressly defined in the specification as "computer-like" (in other words, *not* computers). Plaintiff must overreach in this way and introduce overly technical terms in an attempt to confuse the jury because its infringement contention accuse only the hand-held devices that the inventor obviously did not consider to be computers. Defendants seek only clarity from the Court that hand-held and embedded devices—which the inventor understood would include a processor, memory, data storage, and an input device—are not included within the construction of the term "computer."

---

[3] Because other types of computers may also exist, Defendants have also included "laptop computers" as within the construction of computer. Networked computers may also fit within the construction of this term but because no such computers are remotely at issue in this case, Defendants' construction is intended as a workable and understandable one for a lay jury.

## 2.  A "Signal" May Only Come From a Single Transmission Received from an Input Device

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| "a set of related software-recognizable data which results from user input via an input device" | "a set of related software-recognizable data from a single transmission from an input device"[4] |

As a preliminary matter, Plaintiff improperly implies that Defendants are bound by this Court's earlier construction of the terms "signal" and "measurable variable input." This is untrue. Even on its face, Plaintiff's argument is implausible, as it would allow a due process violation—Defendants cannot be bound by a judgment from a different case, involving different defendants, with different disputes. *See Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008) ("The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'"). Thus, it is not surprising that this Court has found that "**defendants in a later proceeding involving previously construed patents should have the opportunity to brief and argue the issue of claim construction**, notwithstanding any policy in favor of judicial uniformity." *Texas Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 586 (E.D. Tex. 2002) (emphasis added).

In any event, Defendants are proposing a construction that was not previously presented to the Court. Defendants' proposal is based on undisputed evidence from the specifications of the Asserted Patents which have been cited by *each and every* party involved in claim construction of these patents. In particular, the specification of the representative 078 Patent states that "a signal is a set of related software-recognizable data **from a single transmission**." *See* 078 Patent at 3:29-30 (emphasis added). Plaintiff itself acknowledges this passage in passing in its Opening Brief. *See* Opening Br. at 6. Plaintiff fails to mention that this passage has also been cited in

---

[4] Defendants do not dispute that the transmission results from user input, but focus instead on the fact that the transmission bearing the signal(s) comes, itself, from an input device.

nearly every claim construction briefing submitted to the Court as well as this Court's earlier order. *See, e.g.*, *Tierra Intelectual Borinquen, Inc., v. HTC Corp. et al*, Case No. 2:13-cv-00039-JRG, Dkt. No. 110 at 10-11 (E.D. Tex. May 5, 2014) ("Further, Plaintiff acknowledged in its opening brief that 'the plain language of the specification make[s] it clear that a signal is a set of related software-recognizable data **from a single transmission.**'") (internal citation omitted) (hereinafter the "*TIB* Order") (emphasis added).

Despite these repeated citations to the explicit language of the specifications, Plaintiff now argues that Defendants' proposed construction is improper. In order to support its argument, Plaintiff mischaracterizes and misapplies the teachings of the specifications. In particular, Plaintiff cites certain other passages of the specification of the 078 Patent. *See* Opening Br. at 6-7 ("a plurality of signals may emanate from a single transmission" and that "a transmission is user input into the computer via one or more input devices") (citing 078 Patent at 3:16-17, 29-31). Without any intervening analysis explaining how those passages affect the construction of the term, Plaintiff skips to its conclusion that "this discussion does not limit a signal to only come from a single transmission." *See* Opening Br. at 7.

Plaintiff's argument is flawed for two primary reasons. First, the fact that a single transmission may include a plurality of signals does not contradict or otherwise impact Defendants' proposed construction. Defendants acknowledge that a single transmission may include multiple signals. However, this teaching does not suggest – explicitly or implicitly – that a single signal may be spread across multiple transmissions. The second passage cited by Plaintiff similarly does not affect this analysis or Defendants' proposed construction.

Second, Plaintiff cannot point to a single portion of the specifications that suggests or otherwise supports Plaintiff's argument that a single signal can be communicated via multiple

transmissions. As previously discussed, the specifications clearly state that "a signal is a set of related software-recognizable data from a single transmission." *See, e.g.*, 078 Patent at 3:29-30. Plaintiff cannot meaningfully distinguish from this unequivocal teaching in the specifications of the Asserted Patents and has not attempted to do so.

Further compounding these errors, Plaintiff's proposed construction also includes the phrase "*which results from user input into the computer* via an input device." This phrase is unnecessary in light of the claim language and will only serve to confuse the jury. For example, representative claim 1 of the 078 Patent recites the step of "recording user input signals by type from at least one user-selected device." Claim 1 further describes that "a signal comprises a set of related software-recognizable data of the same type received from at least one input device." Thus, the language of the claim indicates that signals are received based upon user input rendering Plaintiff's proposal redundant. *See Tivo, Inc. v. Verizon Commc'ns, Inc.*, No. 2:09-CV-257 (DF), 2012 WL 2499387, at *12 (E.D. Tex. Mar. 12, 2012) ("Verizon's proposed constructions for these terms incorporate elements already present in the asserted claims, which, if adopted, would render those elements redundant."). Further, the claims do not specify or support Plaintiff's suggestion that this user input is "into the computer." In support of this proposal, Plaintiff cites the specification of the 078 Patent which states that "a transmission is user input *into the computer* via one or more input devices." *See* Opening Br. at 7 (citing 078 Patent at 3:29-31) (emphasis added). This argument is confusing and improper. In one instance, Plaintiff is discrediting the explicit teaching of the specifications that "a signal is a set of related software-recognizable data from a single transmission." *See, e.g.*, 078 Patent at 3:29-30. However, Plaintiff then argues that the specifications discussion of "transmissions"—not

"signals"—should be read into the construction of the term "signal." In light of the above,

Defendants' proposed construction is proper and should be adopted.

### 3. "Measurable Variable Input" Must Vary by Gradations Rather than Simply Being a Selection from a Set of Options

| Plaintiff's Construction | Defendants' Construction |
| --- | --- |
| "an input quantity that can vary and that must be measured, as opposed to an input that is distinctly identifiable" | "an input quantity that can gradually vary and that must be measured, as opposed to an input that is discretely identifiable" |

Plaintiff's argument for the term "measurable variable input" demonstrates the need for further clarification of this disputed term. In particular, in its attempt to explain its proposed construction, Plaintiff presents conflicting positions regarding what kinds of input are "measurable variable input." For example, Plaintiff presents the example of typing on a keyboard and notes that "[i]n that case, the keys and timing between keystrokes are both 'measurable' because they can be measured and converted into signals." *See* Opening Br. at 8. Plaintiff goes on to state that "keys and timing between keystrokes are also "variable" because different characters may be used." *Id.* However, on the same page, Plaintiff later acknowledges the Court's *TIB* Order which clarifies that "measured characteristics are different from distinctly identifiable inputs such as key characters." *See id.* (citing the *TIB* Order at 22) (internal citations omitted).

These positions are incompatible and expose that Plaintiff is conflating the concepts of "measurable" and "variable" as previously construed by the Court, going so far as to find all types of user input to be "measurable variable input." As a result, Defendants respectfully request that the Court adopt Defendants' proposed construction to prevent future confusion.

With respect to the term "variable," the specifications and claims of the Asserted Patents discuss comparing a measured signal with a stored signal to determine whether these signals "match" within a certain "tolerance." *See TIB* Order at 19 (citing 078 Patent at 4:10-23 & cls. 5,

13). The specifications distinguish prior art validation methods which required an "absolute signal match" for authentication of typed passwords and the like. *See* 078 Patent at 4:10-23. Instead, the specifications discuss methods of authenticating more variable, difficult-to-exactly-replicate inputs such as timing, movement, and patterns. *See TIB* Order at 19; *see also* 078 Patent at 1:21-28. Although precise keyboard passwords and these less-precise measurable characteristics (i.e. timing, movement, and patterns) are equally capable of "varying," the type of variation is categorically different. In particular, keyboard passwords or PINs are either entered in the correct order or they are not. In this manner, the variance and the input is absolute as opposed to gradual—the user either entered the letter "P" or they did not. However, measurable characteristics described in the specification can, and often do, vary gradually.[5] For example, in the event that the stored password is a specific computer mouse movement, the specifications acknowledge that the user's attempt to replicate the movement may slightly vary from the recorded password. *See* 078 Patent at 3:34-37. So long as this variance is within a certain allowable tolerance, the password will be accepted. *See id.* at 4:18-20.

As previously discussed, Plaintiff's proposed construction does not account for this distinction. In fact, Plaintiff's argument that keyboard strokes—which the parties and Court understood in the prior case are *not* measurable variable input—*can* constitute measurable variable input under their proposed construction is strong evidence that Plaintiff intends to abuse the ambiguity in the Court's prior construction in an attempt to skirt the need to prove the type of

---

[5] Plaintiff incorrectly suggests that Defendants' proposed construction is an "attempt to place an improper time restriction" on this disputed term. *See* Opening Br. at 7. However, the term "gradually" is not intended to imply a certain time limitation – although time inputs are certainly capable of gradually varying. Instead, the term "an input quantity that can gradually vary" means "an input quantity that can vary by gradations" but is presented in language that is intended to be more accessible to the jury. For example, the time between two mouse clicks may be one second, two seconds, or somewhere in between, at one and three-quarter seconds. Similarly, the distance between two mouse positions may be 11 cm, 13 cm, or somewhere in between, at 11.5 cm. The keys on a keyboard or the numbers in a PIN, however, are a discrete set that cannot vary. A user cannot enter a key that is somewhere between the letter J and the letter K—they can only enter those letters individually.

gradual, measurable "variation" contemplated in the specification and the claims of the Asserted Patents. In order to clarify Plaintiff's proposed construction and prevent any future confusion, the Court should clarify that "measurable variable input" is an input quantity that can *gradually* vary as contemplated by the inventor of the Asserted Patents, as opposed to a selection from a set of discrete options (as with key characters) which might otherwise appear "variable" to a jury.

Further, both parties agree that the proper construction of "measurable variable input" requires a distinction or contrast between different types of inputs. Defendants assert that the simplest and most informative way to accomplish this is by drawing a clear distinction between measurable variable input (i.e., difficult-to-exactly-replicate input that can be measured, such as timing or voice signals) and input that is discrete and identifiable without measurement (e.g., password or PIN characters). Defendants respectfully submit that the term "distinct" will only serve to further confuse the jury, as demonstrated by Plaintiff's argument in its Opening Brief. In particular, it is difficult to envision a situation where "identifiable" input is not "distinctly identifiable." Under this construction, even measured characteristics (i.e. timing, movement, and patterns) could be argued to be "distinctly identifiable," resulting in a departure from the specifications and claims of the Asserted Patents. Instead, the Court should adopt the term "discrete[6]" to further specify which types of inputs are *not* measurable variable inputs, including passwords and PINs.

---

[6] Once again, Plaintiff mischaracterizes Defendants' proposed construction when they attack the word "discrete." Defendants are not attempting to inject a specialized, technical definition by using the word "discretely" and plaintiff's dictionary definition of the word "discrete" is a completely unrelated technical definition that applies to discrete *circuitry*. Instead, this word is a plain and ordinary one which should be well understood by jurors. *See* https://www.ahdictionary.com/word/search.html?q=discrete (last accessed April 7, 2016) (giving three definitions of discrete: "1. Constituting a separate thing. 2. Consisting of unconnected distinct parts. 3. *Mathematics* Defined for a finite or countable set of values; not continuous.")

### 4.   A "Signature" Only Protects Access to a Computer, Not Access to Anything

| Plaintiff's Construction | Defendants' Construction |
| --- | --- |
| "at least one transmission intended as a security precaution to preclude unauthorized access" | "a transmission intended as a security precaution to preclude unauthorized access to a computer" |

While the parties proposed constructions are similar, Defendants' proposed construction includes a detail-based analysis of the specifications of the patents-in-suit. The claim term "signature" is properly construed as precluding unauthorized access "*to a computer.*" More specifically, the Abstract of the patents-in-suit establish that the patentee's usage of the term "signature" is directed to access *to a computer*:

> Computer login may comprise any user-determined submission. A user may select among different devices for input, select the signal content, and as well select the types of signals used for a login signature.

Abstract, 725 Patent. "[A]s we have previously stated, in determining the scope of a claim, the abstract of a patent is a potentially useful source of intrinsic evidence as to the meaning of a disputed claim term." *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 966 n.2 (Fed. Cir. 2000) (citing *Hill–Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 n. * (Fed. Cir. 2000)). The detailed description further bolsters the Defendants' proposed construction:

> A signature **4** is at least one transmission **1** intended as a security precaution to preclude unauthorized access **39**. Historically, a single signal **2** of a single transmission **1** has typically been used for a signature **4**, namely a password, which is a signature **4** of a single word of text. A pass-phrase is a signature **4** of a plurality of words of text.

*See* 078 Patent at 4:3-8. As illustrated by the figures of the patents-in-suit, the signature 4s includes the transmission required for access authentication 97 to a computer via a submission 9:



**FIGURE 4**            **FIGURE 2**            078

*See also* 078 Patent at 3:16-19 ("A transmission 1 is user input into the computer 100 via one or more input devices 106, . . .").  Accordingly, "signature" is properly construed as "a transmission intended as a security precaution to preclude unauthorized access *to a computer*." Plaintiff's proposed construction must be rejected for at least two reasons. First, the citations that the Plaintiff relies upon only serves to undermine its own proposed construction. Plaintiff quotes the specification that a "submission [may] solely comprise [a] signature" and a "[s]ubmission comprises one or more transmissions intended for authenticating access **to a computer or network of computers**" Opening Br. at 9 (emphasis added). This sentence makes clear that the "signature" taught in the specification only allows authenticated access **to a computer** (or a network of computers, which would still fall within Defendants' construction as written since the claims are open-ended). Authenticating access to, for example, a room or a bank vault, would fall well outside of the scope of the invention and yet is literally encompassed within Plaintiff's proposed construction.

Second, Plaintiff also seeks to rely on the construction adopted in another case. Opening Br. at 9. There the parties agreed on the construction of this term, meaning that the Court never conducted any examination of the issues. The parties in that case may have simply concluded

that the term was not critical to the fact-specific issues surrounding their case. Notably, no party

in the previous case advocated for a construction of the word "computer" (even though Plaintiff

now agrees that it requires construction). The earlier claim construction order is not binding on

the Defendants. *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 678 (Fed. Cir.

2015) (*"because defendants 'were not parties' to the [prior claim construction] stipulation, 'they

are not bound by it'"*) (quoting *Fuji Photo Film Co. v. Int'l Trade Comm'n*, 386 F.3d 1095, 1101

(Fed.Cir.2004)). Morpho's arguments are an invitation to adopt legal error and must be rejected.

### 5. The Inventor Was Clear that the "Input Device" Was Only Used to Enter Explicit User Input, not Implicit or Passive Input

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| "a device by which a user enters input into a computer system" | "a device by which a user enters explicit input into a computer system" |

The parties proposed constructions for "input device" demonstrate that it is the

instrument by which the user enters input into a computer system. However, Defendants

proposed claim construction includes an additional detail by which the patentee expressly

distinguished the prior art of Zilberman and McKeeth. That is, the patented "input device"

requires that the user enter "explicit input," not implicit or passive input. This means that user

input unintentionally entered (for example, by surreptitious or passive recording of user acts not

intended to be used for user authentication) is distinguished from intentional input (for example,

characters for a password).

The 078 Patent specification distinguishes the claimed invention from the prior art on the

basis that the prior art of McKeeth and Zilberman teach *implicit* input (i.e., recording input

unintentionally entered by the user):

> U.S. Pat. No. 6,766,456 [McKeeth] disclosed user input from one or a combination of input devices as a basis for user authentication. McKeeth used matching of "implicit input" as part of the authentication, where the implicit input is related to the timing and/or duration of explicit inputs.

> Zilberman and McKeeth used surreptitious surveillance of user input, where the user could not choose or control data vital to authentication. McKeeth disclosed the possible usage of multiple input devices, used singularly or in combination, but only disclosed that "the computer system may be configured," never anticipating that a user may choose the input device configuration.

(Col. 1:29-40.) The prosecution history further illustrates this distinction. There, the applicant traversed the examiner's rejection based on the prior art of McKeeth by noting that it taught "implicit input":

> While McKeeth was replete with input variations, there was no suggestion that in McKeeth's system the user made the determination of the input types, not only of device, but especially signal type. To the contrary, McKeeth actually taught away from such signal type user configuration, as McKeeth relied upon what he called "implicit input": monitoring a preconfigured mandatory signal type. *If the user was free to choose the signal types, as claimed by the instant invention herein, there would be no implicit input*, and McKeeth's system as disclosed would not have existed.

(Ex. A at MK-BLU_0000000396-97 (emphasis added).) The applicant also distinguished the patent claims by successfully arguing that the input of McKeeth was "an implicit, invisible, or non-apparent act" or a "passive act." (Ex. A at MK-BLU_0000000512-13.)

Morpho's proposed construction must be rejected as it ignores the intrinsic record.

### 6. "User-Selected [Input] Device" is an Easily Understood Term in View of the Construction of Input Device

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| "device selected by the user by which the user enters input into a computer system" | No construction, in view of construction of "input device". <br><br> If the Court is inclined to construe the term, Defendants propose "an input device selected by the user" |

The parties agree that that terms "user-selected device" and user-selected input device" should be construed identically. Because "input device" is already proposed for construction, Defendants submit that the plain and ordinary meaning of this term should govern. The parties

do not seem to have a meaningful disagreement regarding the construction of this term, given that Plaintiff's opening brief did not even address the term.

If the Court is still inclined to construe the term, Defendants propose "an input device selected by the user," in view of the construction of "input device." This is a simple construction that the jury can understand.

## VI. THE "WHEREIN" TERMS ARE INDEFINITE

Each of the disputed "wherein" terms of the 078 and 725 Patents is indefinite. Plaintiff's attempts at rewriting these claims through claim construction to preserve their validity while altering their meaning should be rejected. Three of these four terms are indefinite for the same type of grammatical failure and ambiguous possible meanings. The fourth term is indefinite for ambiguously claiming that "said recording" (with two possible antecedents, neither of which are a noun) comprises a device.

1. **"wherein recording a plurality of signal types for at least one user-selected device", "wherein creating said signature using recorded signals from a plurality of signal types," and "wherein passively terminating said recording"**

| Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| wherein recording a plurality of signal types for at least one user-selected device | No construction necessary. Or in the alternative:[7] "wherein recording user input signals by type from at least one user-selected device comprises recording a plurality of signal types for at least one user-selected device" | Indefinite. |
| wherein creating said signature using recorded signals from a plurality of signal types | No construction necessary. Or in the alternative: | Indefinite. |

---

[7] Defendants note that each of the "alternative" constructions differ from the "alternative" constructions Plaintiff shared with Defendants during the claim construction process and presented in the Joint Claim Construction Statement. Defendants learned of these alternative constructions for the first time in Plaintiff's opening brief.

| | "wherein creating said signature based at least in part upon at least a portion of said stored recording comprises using recorded signals from a plurality of signal types" | |
| wherein passively terminating said recording | No construction necessary.<br><br>Or in the alternative: "wherein terminating said recording comprises passively terminating said recording" | Indefinite. |

Each of these three "wherein" clauses is indefinite for failure to adequately delineate the bounds of the invention, due to a consistent grammatical error perpetuated by the inventor. Each of these "wherein" phrases introduce an incomplete clause after the word "wherein" that does not use both a subject and a verb. The inventor may have incorrectly assumed that the word "wherein" means "further comprising the step of" but that is not within the plain meaning of the word "wherein."

Each of the three "wherein" clauses are located in the 725 Patent. A "wherein" clause operates in a claim to limit further one or more elements previously introduced either in the same claim or a claim from which it depends. A grammatically correct "wherein" clause includes a subject and a verb that links element(s) introduced in the clause to previously introduced element(s). Each of these three "wherein" clause lacks a verb that would link the elements introduced in the clause to those elements previously introduced, thereby rendering each clause grammatically incomplete on its face. Plaintiff acknowledges implicitly the necessity of a verb by suggesting that to each "wherein" clause a transitional verb "comprises" should be added to the claim, thereby making unstated attempts to correct (or alter) each "wherein" clause. However, Defendant asserts that such corrections are unavailable for these "wherein" clauses because selection of any particular transitional verb, to the exclusion of other possible

alternatives, is open to reasonable debate in view of what the specification discloses to one of ordinary skill in the art.

The Federal Circuit has made clear the requirements needed for a district court to correct an error:

> This case presents the question whether a district court can act to correct an error in a patent by interpretation of the patent where no certificate of correction has been issued. We hold that a district court can do so only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims.

*Novo Indus.*, *LP v. Micro Molds Corp*., 350 F.3d 1348, 1354 (Fed. Cir. 2003). Plaintiff has not attempted to meet this standard in its Opening Brief.

Plaintiff further asserts that a court "should only construe a term to be indefinite when the language is 'insolubly ambiguous' and incapable of construction." (Opening Br. at 13.) To the contrary, the Supreme Court expressly rejected the "not amenable to construction or insolubly ambiguous" standard for indefiniteness nearly two years ago. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

> The Supreme Court granted certiorari, and, rejecting our "not amenable to construction or insolubly ambiguous" standard, vacated and remanded. In its decision, the Court articulated the standard to be applied: "[W]e hold that a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with *reasonable certainty* those skilled in the art about the scope of the invention."

*Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015) (internal citations omitted, emphasis added in Federal Circuit's opinion).

Defendant offers that the prosecution history is silent on the correct interpretation of all three "wherein" clauses and that the consideration of the claim language offers no guidance as to which verb, if any, should be added to each clause and, thus, the specification must be relied upon to inform the debate as to whether alterative verbs are equally plausible for inclusion.

The first disputed "wherein" clause, "wherein creating said signature using recorded signals from a plurality of signal types," is the only clause in Claim 17, which depends from Claim 15 of the 725 patent. The plain and ordinary meaning of the words of the claim do not offer guidance as to what particular verb should be used in the construction thereof ("creating" here is apparently used as a gerund, i.e. a noun, not a verb). The specification, however, makes multiple options equally plausible for addition to the clause, thereby leading to a reasonable debate about what verb to select and rendering the clause inadequate to provide clear notice of what is claimed.

Plaintiff suggests adding the open transitional verb "comprises" to the clause to further delineate "creating said signature" by "using recorded signals . . . ." "The transition 'comprising' in a method claim indicates that the claim is open-ended and allows for additional steps." *Genentech, Inc. v. Chiron Corp.,* 112 F.3d 495, 501, 42 USPQ2d 1608, 1613 (Fed. Cir. 1997). Accordingly, use of the open term 'comprising' would allow the claim to read on any step of creating a signature using any type of transmission or submission so long as the step includes using recorded signals from a plurality of signal types.

However, equally plausible alternative additions to the clause are the closed transitional verb phrase "consisting of" and the semi-closed transitional phrase "consisting essentially of". "The transitional phrase "consisting of" excludes any element step, or ingredient not specified in the claim." *Georgia-Pacific Corp. v. U.S. Gypsum Co.,* 195 F.3d 1322, 1327 (Fed. Cir. 1999) (citing *In re Gray*, 53 F.2d 520 (CCPA 1931) and *Ex parte Davis*, 80 USPQ 448, 450 (Bd. App. 1948)). "[T]he claim phrase "consisting essentially of" excludes ingredients that would "materially affect the basic and novel characteristics" of the claimed composition." *Atlas Powder*

*Co. v. E.I. du Pont De Nemours & Co.,* 750 F.2d 1569, 1574 (Fed. Cir. 1984) (quoting *In re Herz*, 537 F.2d 549, 551 (CCPA 1976)).

The specification suggests that a signature can be created employing possible alternative components, such as a plurality of transmissions, one or more transmission types, one or more signal types and/or composite signals formed from simple signals from more than one device, but does not indicate that any particular component or combination is required.

> A plurality of transmission **1** or signals **2** may be used for identification **3** or signature **4**. In some embodiments, a user may determine the transmission(s) **1**, signal(s) **2**, transmission type(s) **11**, or signal type(s) **21** that comprise a submission **9**.

725 Patent, 4:9-13.

> A transmission **1** of composite signals **2C** comprising a plurality of simple signals **2S** is conceivable. For example a multiple-device **2C** if matching to signals **2** of both devices **106** is required, as does requiring signal match **5** of multiple signal types **21** from a single-device transmission **1**.

725 Patent, 3:43-48. With this "wherein" clause including both the plural "recorded signals" and a "plurality of signal types", it can be reasonably argued that the patentee's intent was to claim narrowly in this dependent claim just one alternative for signature creation to the exclusion of other alternatives suggested in the specification in order to ensure that this particular means of signature creation be claimed narrowly enough to maximize its chance of allowance during prosecution. Such argument would then lead to the selection of the closed transitional verb phrase "consisting of" instead of the open transitional verb "comprising." On the other hand, it could also be reasonably argued that patentee could have thought that the partially closed transitional verb phrase "consisting essentially of" would narrow the claim sufficiently to maximize its chance of allowance in light of possible prior art concerns. While arguments can be reasonably made in support of all three transitional verb phrases for inclusion in this "wherein" clause, the scope of the claim would, depending upon which transitional phrase was added, vary

- 24 -

significantly from allowing only the use of signals of a plurality of signal types in the creation of a signature to allowing other components to be used in conjunction with the signals of different types in creation of a signature. With reasonable debate existing in light of the teaching of the specification, the requirements allowing for correction of this "wherein" clause are not met, leaving the clause incomplete and indefinite.

The second disputed "wherein" clause, "wherein passively terminating said recording," is the only clause in Claim 12, which depends from Claim 10 of the 725 patent. This "wherein" clause suffers not only from a lack of a verb but also a lack of a subject, thereby failing to inform one of ordinary skill in the art as to what the scope of the claim might be. Plaintiff again implicitly requests correction by suggesting the addition of both the subject "terminating said recording" and the transitional verb "comprises" to this "wherein" clause. The request to correct fails to offer a correction that is more plausible than other alternatives, thereby failing both to foreclose reasonable debate and meet the standard for allowance of correction of a claim.

Whereas Plaintiff suggests adding "comprises", it is equally plausible to propose adding instead the transitional phrase "consists of." The specification discloses forms of passive termination and active termination of submissions. "Termination of submission 9 may be active or passive." 725 patent, 4:28. Accordingly, it is plausible that the intent of the patentee in dependent Claim 12 was to limit termination to passive means to the exclusion of active means in order to maximize the chance of allowance of this more narrowly tailored dependent claim, thereby pointing to the transitional verb phrase "consists of" as a possible candidate. With the prosecution history and the claim being silent on the preferred choice and the specification offering no qualifying language that would necessarily point to one alternative over another, reasonable debate can be made in support of either alternative addition to the claim. Thus, the

requirement for making a correction is not met, thereby leaving this "wherein" clause incomplete and indefinite.

The third "wherein" clause, "wherein recording a plurality of signal types for at least one user-selected device," is in independent Claim 15 and similarly suffers from a lack of required verb and subject. With both subject and verb absent from this "wherein" clause, Defendant submits that one of ordinary skill in the art could not discern the scope of this clause with relative certainty from the plain and ordinary meaning of the words of the clause by themselves or in conjunction with the rest of Claim 15. Plaintiff again implicitly requests correction by suggesting the addition to this clause of a subject and the open transitional verb "comprises". And again, Defendant submits that the requirement for correcting a claim is not met in light of the reasonable debate over plausible verb additions that arise from a review of the clause in light of the specification. As with the previous two "wherein" clauses, argument can be made that, instead of "comprises", addition of the closed transitional verb phrase "consists of" or the semi-closed transitional verb phrase "consists essentially of" are equally plausible and that it is impossible to select one over the other.

With the prosecution history silent on this clause and the claim itself failing to point to the appropriate verb, the specification suggests support for either one of the alternative verb phrases. The specification discusses categorization of signal data and, as previously mentioned, alternative components that are usable for creation of identification and signatures. "Signal data 22 may be categorized by its transmission type 11 and/or signal type 21, as depicted in FIG. 5." (725 patent, 3:49-50). It could be argued in support of the addition of "consisting of" or "consisting essentially of" that the patentee intends with this "wherein" clause to exclude transmission type factoring into the recording of the signal data, thereby narrowing the claim

scope further than would the phrase "comprising". The specification does not support one

alternative over another, thereby leaving the issue open to debate. With no foreclosing of debate

emanating from the specification the criteria for correcting a claim is not met as to this "wherein"

clause, thereby leaving it incomplete and indefinite.

### 2.   wherein said recording comprises a plurality of user-selected devices

| Plaintiff's Construction | Defendants' Construction |
| --- | --- |
| No construction necessary<br>In the alternative, "wherein said recording comprises signal types from a plurality of user-selected devices" | Indefinite |

The final "wherein" term is found in claim 10 of the 078 Patent, which claims "The

method according to claim 9, *wherein said recording comprises a plurality of user-selected*

*devices*." Claim 9 reads, in relevant part:

> 9. A computer-implemented method for creating a signature for subsequent
> authentication comprising:
> receiving user selection of at least one signal type among a plurality of selectable
> signal types;
> **recording input data** of at least one signal type from at least one user-selected
> input device among a plurality of selectable user input devices,
> wherein a signal type comprises a category, among a plurality of possible
> categories, of measurable variable input associated with at least one user-selectable
> input device,
> and wherein at least one user-selectable input device affords **recording** a plurality
> of signal types; and
> creating a signature comprising at least in part at least a portion of said input data
> of said user-selected signal types; and
> storing said signature.

(emphasis added).

Read as claimed, claim 10 is nonsense. Literally stated, the claim requires the recording

(itself) to comprise multiple user-selected devices. Stated another way, claim 9 might read, "The

method according to claim 9, wherein one of the method steps comprises an apparatus." It is

completely unclear when such a claim would or could be infringed. Furthermore, "said

recording" in claim 10 is silent as to whether it refers to the first or second instance of the word "recording" in claim 9, which would alter the scope of the claim.

This claim is likely the result of poor claim drafting or an error by the *pro se* inventor. Plaintiff apparently recognizes the claim, as drafted, is incomprehensible and therefore proposes its competing proposal "wherein said recording comprises signal types from a plurality of user-selected devices." If either instance of the word "recording" in claim 9 were a noun (e.g., a gerund, or the "recording" that is created in claim 1 of the 078 Patent and, in claim 2, "comprises signals from a plurality of user selected devices") as opposed to a present participle, then such a construction would at least be intelligible. By way of contrast, claim 1 of the 725 Patent describes the *gerund* "recording" when it claims "receiving user indication of signature input recording," "terminating said recording," "storing at least a portion of said recording" and "said stored recording." Such a "recording" *could* comprise signals (or signal types) from a plurality of user-selected devices, and in fact the inventor claimed that in dependent claim 2 of the 725 Patent. However, even Plaintiff's proposal ultimately fails because both uses of the word "recording" in claim 9 of the 078 Patent are present participles, not nouns. A <u>method step</u> of "recording" cannot "comprise" signal types from multiple devices any more than it can "comprise" multiple devices. Consequently, even Plaintiff's construction would be indefinite as construed, regardless of which recording step "said recording" is supposed to refer to.

The Court should rule this term in a single dependent claim indefinite because it is not amenable to construction and is nonsensical. The claim literally requires the act of recording to consist of input devices. Perhaps the claim should have said "The method of claim 9, further comprising the step of recording input data of at least one signal type from a plurality of user-selected input devices." While the Plaintiff may wish they could re-draft the claims (and are

attempting to do so here rather than in the USPTO), this Court should not rewrite Morpho Komodo's patent claims for them. *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F. 3d 1371, 1374 (Fed. Cir. 2004) (stating "[C]ourts may not redraft claims, whether to make them operable or to sustain their validity," and "[I]n accord with our settled practice we construe the claim as written, not as the patentees wish they had written it."); *Rhine v. Casio, Inc.*, 183 F. 3d 1342, 1345 (Fed. Cir. 1999) ("[I]f the only claim construction that is consistent with the claim's language and the written description renders the claim invalid, then the axiom [that claims should be so construed, if possible, as to sustain their validity] does not apply and the claim is simply invalid.").

In *Chef America*, the claim term in dispute was "heating the resulting batter-coated dough to a temperature in the range of about 400° F to 850° F." 358 F.3d at 1371. All parties agreed that heating the *dough* to that temperature, rather than heating the dough *in an oven heated* to that temperature, would result in a product that "resembles a charcoal briquet" rather than the desired "light, flaky, crispy texture." *Id.* at 1371, 1373. Nevertheless, the Federal Circuit construed the claim as literally written. *Id.* at 1373-76. If the Court is not inclined to find this claim indefinite, it should do the same here by requiring the created recording itself to literally comprise multiple input devices rather than signals or signal types obtained from those devices, as Plaintiff suggests.

## VII.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt their proposed constructions and further find each of the "wherein" terms indefinite.

Dated:        April 19, 2016

                                        /s/ *Brady Cox*
                                        Michael J. Newton (Texas Bar No. 24003844)

Brady Cox (Texas Bar No. 24074084)
**ALSTON & BIRD LLP**
2828 North Harwood Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
Email: mike.newton@alston.com
Email: brady.cox@alston.com

Deron R Dacus (Texas Bar No. 00790553)
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
(903) 705-1117
(903) 581-2543 Fax
ddacus@dacusfirm.com

**COUNSEL FOR DEFENDANT DELL INC.**


By: */s/ Blake Dietrich*
Robert P. Latham
Texas State Bar No. 11975500
blatham@jw.com
John M. Jackson
Texas State Bar No. 24002340
jjackson@jw.com
Blake Dietrich
Texas State Bar No. 24087420
bdietrich@jw.com
**JACKSON WALKER L.L.P.**
2323 Ross Ave., Suite 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 – Fax

**ATTORNEYS FOR DEFENDANT PCS
WIRELESS, LLC**


By:*/s/ Thane Bauz*
N. Thane Bauz, CA Bar No. 188439
Email: tbauz@perkinscoie.com
John D. Esterhay, CA Bar No. 282330
Email: jesterhay@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350

San Diego, CA 92130-2594
Telephone: 858.720.5700
Facsimile: 858.720.5799


J. Thad Heartfield
Texas State Bar No. 09346800
Email: thad@heartfieldlawfirm.com
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
Telephone (409) 866-3318
Fax: (409) 866-5789

**ATTORNEYS FOR DEFENDANTS
INFOSONICS CORPORATION AND
VERYKOOL USA, INC.**

By:*/s/ Isaac Lew*
Bernard Egozi
Isaac Lew
**Egozi & Bennett PA**
2999 NE 191st Street
Suite 407
Aventura, FL 33180
305.931.3000
Fax: 305.931.9343
Email: begozi@egozilaw.com
Email: ilew@egozilaw.com

**ATTORNEYS FOR DEFENDANTS
BLU PRODUCTS, LLC**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served on all counsel of record via the Court's Case Management/Electronic Case Filing system and/or electronic mail on April 19, 2016.

*/s/ Brady Cox*
Brady Cox