# Exhibit A

Excerpts of Prosecution History of the Patents-in-Suit
MK-BLU_0000000390 − 398, 504 − 517



Application No.: 10/090,520
Filed:            03/04/2002
Group Art Unit: 2136

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Regarding the application:

| | |
|---|---|
| Title: User selection of computer login | Examiner: Cervetti, David Garcia |
| Number: 10/090,520 | Art Unit: 2136 |
| Priority: April 26, 2001 | REQUEST FOR CONTINUED EXAMINATION |

Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir/Madam:

This Request for Continued Examination (RCE) is filed responsive to the Examiner's final rejection, mailed December 22, 2005.

Clean and marked copies for a corrected substitution specification, compliant with 37 CFR 1.125(b)&(c), with corrections to Examiner's objections, but no new matter introduced, is submitted herein.

The drawings have been revised for compliance with 37 CFR 1.21(d) and 37 CFR 1.84(p)(4)&(5), and are herein submitted.

Largely agreeing with Examiner's previous rejections with regard to deficiencies in claim drafting, applicant has canceled all previously pending claims, and drafted new claims with careful regard to definiteness and novelty over the prior art. Please examine the new claims.

A credit card form is enclosed for payment.

Thank you.

Respectfully submitted,

Gary Odom

123 NW 12th Avenue, #1332; Portland, OR 97209          phone: 206.529.5146; fax: 775.942.8525

Dated: January 17, 2006

01/20/2006 JBALINAN 00000057 10080520
01 FC:2801                    395.00 OP                    page 1 of 9

MK-BLU_0000000390

Application No.: 10/090,520
Filed:            03/04/2002
Group Art Unit: 2136

## Claims

The following is claimed:

1-26. (canceled)

27. (new) A computer-implemented method for creating a signature for subsequent authentication comprising the following steps:

indicating to a user commencement of signature input recording;

creating a signature by at least in part recording input signals by type from at least one user-selected device among a plurality of selectable user input devices,

wherein a signal comprises a set of related software-recognizable data of the same type received from at least one input device, and

wherein at least one user-selectable input device affords recording a plurality of signal types, and

wherein a signal type comprises a category, among a plurality of possible categories, of measurable variable input associated with at least one user-selectable input device.

28. (new) The method according to claim 27, wherein said recording comprises signals from a plurality of user-selected devices.

29. (new) The method according to claim 27, with the additional step of receiving user selection of at least one signal type from a plurality of signal types associated with at least one user input device.

30. (new) The method according to claim 27, with the additional step of passively terminating authentication comparison of a subsequent signature submission to said recording,

thereby authenticating said subsequent signature.

MK-BLU_0000000391

Application No.: 10/090,520
Filed:              03/04/2002
Group Art Unit:  2136

31. (new) The method according to claim 27, with the following additional steps:

comparing a subsequent signature submission to said recording;

authenticating access even if said comparison results in an inexact match.

32. (new) The method according to claim 31, wherein the inexactness of said inexact match comprises a user-designated tolerance.

33. (new) The method according to claim 27, with the additional step of presenting at least a portion of said recording to said user for editing.

34. (new)  The method according to claim 27, with the additional step of editing said recording.

35. (new) A computer-implemented method for creating a signature for subsequent authentication comprising:

receiving user selection of at least one signal type among a plurality of selectable signal types;

recording input data of at least one signal type from at least one user-selected input device among a plurality of selectable user input devices,

wherein a signal type comprises a category,  among a plurality of possible categories, of measurable variable input associated with at least one user-selectable input device,

and wherein at least one user-selectable input device affords recording a plurality of signal types;

creating a signature comprising at least in part said input data of said user-selected signal types.

36. (new) The method according to claim 35, wherein said recording comprises a plurality of user-selected devices.

37. (new) The method according to claim 35, such that said recording precedes said receiving signal type selection.

MK-BLU_0000000392

Application No.:  10/090,520
Filed:            03/04/2002
Group Art Unit:   2136

38. (new) The method according to claim 35, wherein at least one said signal type comprises input from a plurality of devices.

39. (new) The method according to claim 35, with the following additional steps:
comparing a subsequent signature submission to said recording;
authenticating access even if said comparison results in an inexact match.

40. (new)  The method according to claim 35, with the additional step of editing said recording.

41. (new)  The method according to claim 35, wherein said recording comprises a plurality of user-selected signal types.

42. (new) A computer-implemented method for incrementally authenticating a signature while receiving user input comprising:
iteratively receiving a plurality of portions of user input data and performing a corresponding authentication step for each portion,
wherein the first authentication step upon receiving a first portion of said user input comprises accumulating keys based upon matching correspondingly key data to said first portion of user input data,
wherein a key comprises at least in part a portion of a previously stored signature, said signature divisible into portions, said keys associating portions sequentially either integrally or by reference,
wherein, upon receiving each subsequent portion after said first portion, discarding from further processing previously accumulated keys based upon failure in matching respective key data to said user input data portion;
whereby continuing said iterative process until completing authentication by matching said last key to corresponding said user input data portion, or by process of elimination determining authentication impossible.

page 4 of 9

MK-BLU_0000000393

Application No.:  10/090,520
Filed:            03/04/2002
Group Art Unit:  2136

43. (new) The method according to claim 42, wherein accepting said match within a designated tolerance of inexactness.

44. (new) The method according to claim 42, wherein accessing at least one key by reference from another key.

45. (new) The method according to claim 42, wherein said first portion comprises input from a plurality of devices.

46. (new) A computer-implemented method for storing the signatures of a plurality of users comprising the following steps:

recording a plurality of signatures comprising data of a plurality of transmission types and signal types,

wherein a transmission type comprises indicia of a user-selected input device among a plurality of user-selectable devices,

wherein a signal type comprises a category, among a plurality of possible categories, of measurable variable input associated with at least one user input device;

partitioning said signature data by transmission type and by signal type.

47. (new) The method according to claim 46, with the additional step of storing a signature at least in part by partitioning said signature into portions by signal type,

such that at least one portion references another portion of said signature.

MK-BLU_0000000394

Application No.:  10/090,520
Filed:             03/04/2002
Group Art Unit:  2136

48. (new) A computer-implemented method for creating a signature comprising the following steps:

recording user input of a plurality of signal types from at least one user-selected device among a plurality of user-selectable devices,

wherein a signal type comprises a category, among a plurality of possible categories, of measurable variable input associated with at least one user input device;

receiving user selection among those signal types recorded,

whereby receiving user selection of at least one less signal type than recorded for said device;

creating a signature comprising at least in part said user-selected signal types.

49. (new) The method according to claim 48, with the additional step of receiving user indication to edit said signature.

MK-BLU_0000000395

Application No.:  10/090,520
Filed:               03/04/2002
Group Art Unit:  2136

## Remarks

### Title Change

Please change the title to "User selection of computer login."

### Drawings

The replacement drawing sheets comprise deletions of reference numbers from the following figures because the reference numbers were not mentioned in the disclosure: transmission(s) and signal(s) in Fig. 3 & 4; no and yes in Fig. 7 & 8; mouse speed, mouse vector, and key in Fig. 14; no and submission completed? in Fig. 15; signal match, I, key remaining? for each signal, for each remaining key in Fig. 17; key, no, retry, key file, initial key file, wrong key file, terminal key file, first key trajectory, second key trajectory, third key trajectory, last key trajectory, in Fig. 18; key, no, retry, key file, initial key file, wrong key file, terminal key file, first key trajectory, second key trajectory, last key trajectory, in Fig. 19.

### 35 U.S.C. §102 Prior Art - USPN 6,766,456 (McKeeth)

#### User Selection

McKeeth anticipated receiving a variety and combination of types of input signals, but never anticipated that a user could select which are to be used for authentication. McKeeth only stated that "the computer system may be designed" or "the computer system may be configured", never suggesting that the user may set the design or configuration used for authentication.

The system comprises a user interface configured to communicate security information and an implicit input to the computer. [2:8-10]

For example, the computer system 100 may be designed to receive a combination of input signals in a form of a password from a keyboard, in a form of a fingerprint scan from an optical scanner (e.g., placed on the keyboard or mouse), and in a form of a geometric pattern from a mouse or trackball. [3:12-17]

While McKeeth was replete with input variations, there was no suggestion that in McKeeth's system the user made the determination of the input types, not only of device, but especially signal type. To the contrary, McKeeth actually taught away from such signal type user configuration, as

page 7 of 9

MK-BLU_0000000396

Application No.:  10/090,520
Filed:              03/04/2002
Group Art Unit:  2136

McKeeth relied upon what he called "implicit input": monitoring a preconfigured mandatory signal type. If the user was free to choose the signal types, as claimed by the instant invention herein, there would be no implicit input, and McKeeth's system as disclosed would not have existed.

In one embodiment, the user is always required to perform an implicit, invisible, or non-apparent act (the "implicit" act or input). The implicit input may include an active and/or a passive act. For instance, in performing the active act, the user may generate a geometric pattern (e.g., using a mouse) when requesting access to the computer system 100. The computer system 100 may be configured to recognize a particular geometric pattern under the condition that the user performs such pattern concurrently with, or after a predetermined duration from, scanning his/her fingerprint. In performing the passive act, the user may wait a predetermined time intervals between entry of various components of the security information or, for instance, may skip a predetermined letter of each component of the security information. In heightened security applications, it may be desirable to configure the computer system 100 to issue a security alert to the responsible authority (e.g., security guards or law enforcement personnel) if the user fails to perform the geometric pattern. Accordingly, even if the compare circuit 150 determines that the input (e.g., fingerprint) and security information do match, the compare circuit 150 may still issue the flag signal because of the user's failure to perform the geometric pattern. [4:5-27]

In such a scenario, the computer system 150 recognizes that while the user may be legitimate, the user's failure to perform the geometric pattern may be an indication that the user is experiencing duress or force to access the computer system 100, as described for the method of FIG. 4. In some applications, it may be desirable to grant a limited access to the user to give the false impression that access to the computer system 100 is granted as usual. As used herein, "limited access" is any access that provides a user or intruder access that is less than complete access to the computer system 100. However, concurrently with the limited access, a silent security alert may be issued to security personnel, without allowing the user or intruder to know. Using the silent security alert mode silent alert minimizes risk to the user under duress. [4:28-43]

The claimed instant invention herein is an improvement upon McKeeth's system, which, under McKeeth's duress example, could be compromised by someone knowing what the set system configuration of implicit input was, or at least knowing if it was not performed. As

MK-BLU_0000000397

Application No.: 10/090,520
Filed:          03/04/2002
Group Art Unit: 2136

claimed, user selection of device and/or signal type provides a combinatorial explosion of possibilities as to what proper user inputs could be.

### Iterative Incremental Authentication

In reference to claim 43 regarding iterative incremental authentication, and examiner's previous rejection in that claim area, McKeeth [3:52-4:4] disclosed a fingerprint compare circuit which failed to anticipate iterative incremental authentication. Previously examiner-cited McKeeth [4:5-28], quoted above, disclosed his implicit input idea, something completely different than iterative incremental authentication as presently claimed.

MK-BLU_0000000398

Application No.:  10/090,520
Filed:            03/04/2002
Group Art Unit:   2136

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Regarding the application:

| | | | |
|---|---|---|---|
| Title: | Computer login multiplicity | Examiner: | Cervetti, David Garcia |
| Number: | 10/090,520 | Art Unit: | 2136 |
| Priority: | April 26, 2001 | | REPLY TO EXAMINER OFFICE ACTION |

Mail Stop Non-Fee Amendment
Commissioner for Patents
Box 1450
Alexandria, VA 22313-1450

Sir/Madam:

This is filed responsive to the Examiner's office action dated May 23, 2005.

In compliance with 37 CFR 1.121(c)(2) for claim amendments, deletions are indicated by strike-through, or double brackets [[]] for five consecutive characters or less, while additions are underlined.

Please examine the following claims.

Please note a new correspondence address and phone number.

Respectfully submitted,

Gary Odom

123 NW 12th Avenue, #1332; Portland, OR 97209
telephone: 206.529.5146   fax: 775.942.8525

Dated: July 12, 2005

MK-BLU_0000000504

Application No.: 10/090,520
Filed:       03/04/2002
Group Art Unit:  2136

## Claims

1. (currently amended) <u>A computer-implemented system for</u> ~~Software~~ creating a user signature subject to subsequent validation,

wherein at least part of said signature comprises at least one user-determined transmission type.

2. (currently amended) <u>A computer-implemented system for</u> ~~Software~~ validating a signature comprising ~~a plurality of signals by accessing data from a plurality of keys~~ <u>at least in part at least one composite signal from a plurality of devices</u> .

3. (currently amended) <u>A computer-implemented system for</u> ~~Software~~ incrementally validating a signature while receiving signature input.

4. (previously presented) A computer-implemented method for creating a user signature comprising at least one transmission,

said signature subject to subsequent validation,

said method comprising the following steps:

receiving user determination of a transmission type of at least one transmission;

recording a plurality of signal types for at least one transmission;

packaging at least one recorded transmission into at least one key.

5. (previously presented) A computer-implemented method for validating user input data comprising the following steps:

accumulating possible keys based upon matching key data to initial input data;

discarding accumulated keys based upon failure to match to subsequent input data until completing validation or by process of elimination determining validation impossible.

MK-BLU_0000000505

Application No.:  10/090,520
Filed:            03/04/2002
Group Art Unit:   2136

6. (currently amended) A computer-implemented system ~~Software~~ according to claim 1, wherein receiving said user determination of at least one signal type of at least one transmission of said signature.

7. (currently amended) A computer-implemented system ~~Software~~ according to claim 6, wherein said <u>received</u> user-determined signal type is of a user-determined transmission type.

8. (currently amended) A computer-implemented system ~~Software~~ according to claim 1, wherein said signature comprises the entirety of a resource access submission.

9. (currently amended) A computer-implemented system ~~Software~~ according to claim 2, wherein ~~said~~ validating <u>said signature</u> by accessing data from a plurality of keys ~~stored in one or more files,~~
wherein <u>at least one key has at least one trajectory</u> ~~said keys are in non-contiguous storage locations.~~

10-12. (canceled)

13. (currently amended) A computer-implemented system ~~Software~~ according to claim 3, wherein said validating comprises signal matching,
whereby said matching may be successful with an inexact match between stored data and corresponding submitted input data.

14. (currently amended) A computer-implemented system ~~Software~~ according to claim 3, whereby said validation terminates passively.

15. (currently amended) A computer-implemented system ~~Software~~ according to claim 14, wherein said passive termination being user-determined during creating said signature validation protocol.

MK-BLU_0000000506

Application No.:  10/090,520
Filed:           03/04/2002
Group Art Unit:  2136

16. (previously presented) The method according to claim 4,

wherein receiving said user determination of at least one signal type of at least one

transmission.

17. (previously presented) The method according to claim 4,

wherein receiving said user determination of a plurality of transmission types from a plurality

of said recorded transmissions.

18. (previously presented) The method according to claim 4,

whereby recording a plurality of signal types emanating from a single transmission.

19. (currently amended) The method ~~Software~~ according to claim 4,

wherein storing at least one fake key.

20. (previously presented) The method according to claim 4,

wherein packaging at least one next key trajectory in said key.

21. (previously presented) The method according to claim 4,

wherein packaging a plurality of next key trajectories in said key.

22. (previously presented) The method according to claim 21,

whereby said different next key trajectories are to keys in different files.

23. (previously presented) The method according to claim 4,

wherein at least one transmission comprises input from a plurality of devices.

24. (new) A computer-implemented system according to claim 2,

wherein said signature comprises at least in part one transmission from a single input device.

MK-BLU_0000000507

Application No.: 10/090,520
Filed:          03/04/2002
Group Art Unit: 2136

25. (new) A computer-implemented system according to claim 2,

wherein validating said signature at least in part using an inexact match.


26. (new) A computer-implemented system according to claim 2,

wherein using an ordinal representing a signal type or transmission type.

MK-BLU_0000000508

Application No.: 10/090,520
Filed:          03/04/2002
Group Art Unit: 2136

## Remarks

### Oath/Declaration

A new declaration in compliance with 37 CFR 1.67(a) is enclosed.

### Drawings

Applicant thanks Examiner for due diligence in objecting to deficiencies in the drawings.

For comprehensiveness, all drawings are replaced, and are now hopefully in compliance with 37 CFR 1.121(d) and 37 CFR 1.84(p)(5), with the following specific changes from the originally submitted drawings:

- Figure 1, sheet 1: CPU 102 was wrongly numbered;

- Figure 17, sheet 8: items 53 and 58 had the wrong font;

- Figure 18, sheet 9: item 39 had an obscured line;

- Figure 18, sheet 9: item 38 has been renumbered to item 28 to correspond to the reference in the specification.

- Figure 19, sheet 10: item 39 had an obscured line;

- Figure 7, sheet 7: the reference characters (numbers) from items 61-62 have been removed because they were not referenced in the description;

- Figure 8, sheet 7: the reference characters (numbers) from items 63-64 have been removed because they were not referenced in the description;

- Figure 14, sheet 6: the reference characters (numbers) from items 213 & 216 have been removed because they were not referenced in the description;

- Figure 15, sheet 7: the reference characters (numbers) from items 44-45 have been removed because they were not referenced in the description;

- Figure 17, sheet 8: the reference characters (numbers) from items 53, 56, 58, 808, 70, 71 have been removed because they were not referenced in the description;

- Figure 18, sheet 9: the reference characters (numbers) from items 65, 72, 86 have been removed because they were not referenced in the description. Item 63, mentioned by the Examiner for deletion, is referenced on page 16, line 23 in the description.

MK-BLU_0000000509

Application No.: 10/090,520
Filed:          03/04/2002
Group Art Unit:  2136

- Figure 19, sheet 10: the reference characters (numbers) from items 63, 65 have been removed because they were not referenced in the description.

Examiner cited instances under 37 CFR 1.84(p)(5) of missing reference signs in the drawings mentioned in the description:

- Figure item 3 (mentioned on page 5, line 16): appears in Figure 3 on drawing sheet 1 (and was in the originally submitted drawings);

- Figure item 109 (page 5, line 16): appears in Figure 13 on drawing sheet 5 (and was in the originally submitted drawings);

- Figure item 97 (page 6, line 12): appears in Figure 2 on drawing sheet 1 (and was in the originally submitted drawings);

- Figure item 27 (page 15, line 15): appears in Figure 2 on drawing sheet 1 (and was in the originally submitted drawings);

- Figure item 28 (page 15, line 15): now appears in Figure 18 on drawing sheet 9 (was previously wrongly numbered 38 in the drawing);

**Specification**

Examiner mentioned the proper form of the Abstract, and put an objection checkmark on the office action summary, but Applicant cannot find fault with the previously submitted Abstract in light of the guidelines provided by the Examiner, 37 CFR 1.72, or MPEP 608.01(b). If Examiner would point out particular deficiencies, Applicant would readily make changes.

**Claim Rejections - 35 USC §112**

Examiner rejected claim 7 "said user-determined signal type" on the basis of 35 USC §112 as lacking antecedent basis. Applicant respectfully submits that antecedent basis existed in the previously presented claim, but in the interest of compact prosecution, applicant has currently amended the claim to clarify that "said user-determined signal type" refers to the received user-determined signal type ("receiving said user determination of at least one signal type") specified in claim 6. Certainly as amended the aforementioned reference in claim 7 is clear, and especially so in light of the foregoing statement of claim construction and attendant prosecution estoppel.

MK-BLU_0000000510

Application No.:  10/090,520
Filed:            03/04/2002
Group Art Unit:   2136

### Claim Rejections - 35 USC §101

Applicant thanks Examiner for pointing out the non-statutory subject matter claimed previously in independent claims 1-3, and their dependents 6-15. Claims 1-3 are currently amended so as to render the subject matter statutory, and thereby place the claims in condition for allowance.

### Claim Rejections - 35 USC §102

#### USPN 6,442,692 (Zilberman) re: claims 1-4, 6-8, 16-18

Applicant respectfully observes that Zilberman was in no way anticipatory of independent claims 1 & 4, and their attendant dependent claims (6-8 & 16-18), as Zilberman lacked the requisite user determinations as claimed.

Regarding claim 1 and its dependent claims, there is no mention anywhere in Zilberman's specification or claims that suggest Zilberman anticipated a user determining transmission type. This is demonstrated most readily by Zilberman restricting himself keyboard input, a single transmission type. With all due respect, applicant could not determine that Examiner's citation of Zilberman [4:60-5:27] disclosed what Examiner asserted.

To promote further understanding, below is the relevant paragraph defining transmission and transmission type, from page 4, lines 12-17 of the disclosure:

A transmission 1 is user input into the computer 100 via one or more input devices 106, whereupon termination of transmission 1 is recognizable, and resulting in at least one signal 2. There may be different types 11 of transmissions 1, examples of which include mouse 107 movements or clicks, keyboard 108 entry, or combinations thereof. Other types 11 of transmissions 1 are possible with different input devices 106, such as, for example, voice transmission 1 if the computer 100 is equipped with a microphone and speakers.

A transmission, as defined above, "is user input into the computer via one or more input devices". A transmission type, as stated above, is device specific, either by a single device - keyboard input being exemplary, or a combination of devices which may define a type - keyboard + mouse input being exemplary.

The same argument with regard to user determination of transmission type applies to rejection of claim 4 and its dependents as to claim 1: Zilberman offered no anticipation. With all due

MK-BLU_0000000511

Application No.: 10/090,520
Filed:           03/04/2002
Group Art Unit:  2136

respect, applicant could not determine that Examiner's citation of Zilberman [7:37-8:39] disclosed what Examiner asserted.

Applicant respectfully submits that Zilberman struck out twice in lacking anticipation of claims 6-7, and 16-17 by lacking user determination of: [1] transmission type (from claim 1), and [2] signal type (from claims 6, 7). With all due respect, Examiner's citation of Zilberman [4:60-5:27] did not disclose what Examiner asserted.

Regarding claim 8, respectfully submitted that Zilberman did not appear to anticipate a signature being the claimed "entirety of a resource access submission". With all due respect, applicant could not determine that Examiner's citation of Zilberman [7:37-8:39] disclosed what Examiner asserted.

Zilberman offered no user determination as claimed in rejected claims 1, 4, 6-8, and 16-18, as well as specific dependent claim limitations, as explained foregoing. Thus, Examiner's rejections of claims 1, 4, 6-8, and 16-18 in light of Zilberman under 35 USC §102 are respectfully traversed.

### USPN 6,766,456 (McKeeth) re: claims 2-3, 5, 12, 14-15

Claim 2 is currently amended to claim "validating a signature comprising at least in part a composite signal". A composite signal was defined on page 5, lines 1-4 of the disclosure as follows:

> A transmission 1 of composite signals 2C comprising a plurality of simple signals 2S is conceivable. For example, a multiple-device 106 transmission 1m produces a composite signal 2C if matching to signals 2 of both devices 106 is required, as does requiring signal match 5 of multiple signal types 21 from a single-device transmission 1.

McKeeth disclosed "The user may input these signals substantially concurrently, or in any agreed upon sequence." [3:18-19] Respectfully submitted that this does not anticipate a composite signal from a single transmission, as "substantially concurrently" does not anticipate simultaneously in a single transmission.

Zilberman disclosed a single device, namely a keyboard, and so failed to anticipate the limitations of claim 2 as currently amended.

Regarding claim 3 and its dependent claims, applicant respectfully traverses Examiner's rejection, as there is no mention found anywhere in McKeeth's specification or claims that suggest McKeeth anticipated "incrementally validating a signature while receiving signature input".

page 9 of 14

MK-BLU_0000000512

Application No.:   10/090,520
Filed:            03/04/2002
Group Art Unit:   2136

McKeeth [3:52-4:4] disclosed comparison of user IDs and passwords to stored memory; a conventional prior art validation as far as applicant could tell. McKeeth [4:5-28] disclosed an alternative embodiment requiring what McKeeth disclosed as "an implicit, invisible, or non-apparent act". McKeeth disclosed two separate transmissions, possibly input "substantially concurrently", but each validated separately upon input completion, not incrementally during input as claimed. Respectfully submitted that McKeeth failed to disclose incremental signature validation as claimed.

Regarding claim 5 and its dependent claims, applicant respectfully traverses Examiner's rejection, as there was no found mention anywhere in McKeeth's specification or claims that suggest McKeeth anticipated the validation key processing limitations as claimed. With all due respect, applicant could not determine that McKeeth [3:52-4:28] disclosed what Examiner asserted.

Regarding claim 12, McKeeth [6:10-33] disclosed further implicit input, as mentioned foregoing with regard to claim 5. Respectfully submitted that McKeeth in no way anticipated a next key trajectory. For ready reference, below is a quote from the application regarding next key trajectory, from page 11, lines 17-18.

Next key trajectory 7 provides all or part of a reference to the next key 6 used in validation 18, if there is a next key 6.

Regarding claim 14, McKeeth disclosed a "passive act" as follows:

In performing the passive act, the user may wait a predetermined time intervals between entry of various components of the security information or, for instance, may skip a predetermined letter of each component of the security information. [4:14-19]

By comparison, passive validation as claimed is disclosed in an exemplary manner from page 7, lines 5-7:

Another example: incremental validation 181 permits passive termination 77 via absence of next key trajectory 7, or, alternately, completed signal matching 5 of all relevant keys 6.

McKeeth's "passive act" referred to user submission, not validation as claimed. With all due respect, applicant could not determine that McKeeth [6:10-33] disclosed what Examiner asserted.

Regarding claim 15, with all due respect, McKeeth stated absolutely nothing in Examiner's cited [2:49-3:51] reference that anticipated the concomitant limitation of claim 15, of  "passive

page 10 of 14

MK-BLU_0000000513

Application No.:   10/090,520
Filed:            03/04/2002
Group Art Unit:   2136

termination being user-determined during creating said signature validation protocol". Again, McKeeth was referring to submission, not validation.

Examiner's rejections of claims 2-3, 5, 12, and 14-15 in light of McKeeth under 35 USC §102 are respectfully traversed.

### Claim Rejections - 35 USC §103

#### USPN 6,766,456 (McKeeth) re: claims 9-11

Regarding claim 9, Examiner conceded that McKeeth never anticipated validation using a plurality of keys. Claim 9 is currently amended to add the limitation of a key having a trajectory.

#### USPN 6,766,456 (McKeeth) + USPN 4,621,334 (Garcia) re: claim 13

Examiner conceded that McKeeth failed to anticipate inexact signal matching. To cover that defect of anticipation, Examiner combined McKeeth with Garcia. McKeeth, however, failed to anticipate the claimed "incrementally validating a signature while receiving signature input", as argued foregoing, so, with all due respect, Examiner's combination argument for rejection of claim 13 is mooted.

#### USPN 6,442,692 (Zilberman) + USPN 5,203,966 (Wittenberg) re: claim 19

Examiner conceded that Zilberman failed to anticipate storing a fake key. To cover that defect of anticipation, Examiner combined Zilberman with Wittenberg. Zilberman, however, failed to anticipate the limitations of claim 4, as argued foregoing, so, with all due respect, Examiner's combination argument for rejection of claim 13 is mooted; but that's not all.

Examiner employed Wittenberg's disallowance of particular passwords [1:35-47; 5:30-68] as a partial basis of anticipation of claim 19. With all due respect, Wittenberg and the claim 19 limitation of a fake key are diametric. Wittenberg disclosed a filtering mechanism for impermissible or unacceptable passwords - passwords that would never be permitted for use. Under Wittenberg's system, these impermissible password candidates would never be stored in the system that stores passwords. Claim 19, on the contrary, as a dependent of claim 4, claims storing a fake key in the system, something entirely opposite of Wittenberg. Examiner's prior art rejection of claim 19 is thus respectfully traversed as having no basis of support whatsoever.

MK-BLU_0000000514

Application No.: 10/090,520
Filed:           03/04/2002
Group Art Unit:  2136

### USPN 6,442,692 (Zilberman) + USPN 6,766,456 (McKeeth) re: claim 20-23

Regarding claims 20-23: as argued foregoing, Zilberman failed to anticipate claim 4, the independent claim upon which claims 20-23 are dependent, and so, respectfully submitted, claims 20-23 are allowable over the cited prior art.

Regarding claims 20-23, respectfully submitted that Examiner applied impermissible hindsight in combining Zilberman and McKeeth. Examiner's blithe assertion that "one of ordinary skill in the art would have been motivated... to grant user access..." is insufficient as a justifiable argument of motivation in combining prior art references in light of case law attendant to 35 USC §103(a). There is considerable antecedent consensus in U.S. court decisions that some documentary evidence must exist within the prior art references themselves to justify motivation of a prior art combination as a basis for 35 USC §103(a) rejection.

The mere fact that references can be combined or modified does not render the resultant combination obvious unless the prior art also suggests the desirability of the combination. In re Mills, 916 F.2d 680, 16 USPQ2d 1430 (Fed. Cir. 1990)

A statement that modifications of the prior art to meet the claimed invention would have been " 'well within the ordinary skill of the art at the time the claimed invention was made' " because the references relied upon teach that all aspects of the claimed invention were individually known in the art is not sufficient to establish a prima facie case of obviousness without some objective reason to combine the teachings of the references. Ex parte Levengood, 28 USPQ2d 1300 (Bd. Pat. App. & Inter. 1993). See also In re Kotzab, 217 F.3d 1365, 1371, 55 USPQ2d 1313, 1318 (Fed. Cir. 2000)

"Our case law makes clear that the best defense against the subtle but powerful attraction of a hindsight-based obviousness analysis is rigorous application of the requirement for a showing of the teaching or motivation to combine prior art references." Dembiczak, 175 F.3d at 999; see also Ruiz, 234 F.3d at 665 (explaining that the temptation to engage in impermissible hindsight is especially strong with seemingly simple mechanical inventions). This is because "[c]ombining prior art references without evidence of such a suggestion, teaching, or motivation simply takes the inventor's disclosure as a blueprint for piecing together the prior art to defeat patentability— the essence of hindsight." Dembiczak, 175 F.3d at 999. Therefore, we have consistently held that a person of ordinary skill in the art must not only have had some motivation to combine the prior

page 12 of 14

MK-BLU_0000000515

Application No.:  10/090,520
Filed:  03/04/2002
Group Art Unit:  2136

art teachings, but some motivation to combine the prior art teachings in the particular manner claimed. See, e.g., In re Kotzab, 217 F.3d 1365, 1371 (Fed. Cir. 2000) ("Particular findings must be made as to the reason the skilled artisan, with no knowledge of the claimed invention, would have selected these components for combination in the manner claimed."); In re Rouffet, 149 F.3d 1350, 1357 (Fed. Cir. 1998) ("In other words, the examiner must show reasons that the skilled artisan, confronted with the same problems as the inventor and with no knowledge of the claimed invention, would select the elements from the cited prior art references for combination in the manner claimed."). Teleflex v. KSR International, 04-1152 (CAFC 2005).

Regarding claims 20-22, respectfully submitted that McKeeth [2:1-30] failed to anticipate next key trajectories. With all due respect, applicant could not determine that Examiner's citation of McKeeth [2:1-30] disclosed what Examiner asserted.

Regarding claim 23, respectfully submitted that McKeeth [3:10-28] failed to anticipate the claimed "at least one transmission comprises input from a plurality of devices". With all due respect, applicant could not determine that McKeeth [3:10-28], cited by the Examiner, disclosed what Examiner asserted. McKeeth disclosed user input from multiple devices at different times, at best "substantially concurrently", that is, different transmissions; whereas claim 23 clearly claims a single transmission comprising input from multiple devices.

MK-BLU_0000000516

Application No.:  10/090,520
Filed:           03/04/2002
Group Art Unit:  2136

**Canceled Claims**

In compliance with CFR 1.121(c)(4), please cancel claims 10-12.

**New Claims**

New claim 24, dependent upon claim 2, adds a limitation of a signature comprising at least a composite signal from multiple devices (claim 2), and at least one transmission from a single device (claim 24). No known prior art anticipates combined limitations of claim 2 and claim 24.

New claim 25, dependent upon claim 2, adds a limitation of validating a signature at least in part using an inexact match. No known prior art anticipates the combined limitations of claim 2 and claim 25.

New claim 26, dependent upon claim 2, representing a transmission type or signal type using an ordinal. No known prior art anticipates the combined limitations of claim 2 and claim 26.

Applicant respectfully traverses all of Examiner's claim rejections. Applicant thanks Examiner for careful examination of the claims, drawings and disclosure. Applicant respectfully submits that the currently submitted claims and specification are in order for allowance.

MK-BLU_0000000517