# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **MORPHO KOMODO LLC,** | |
| Plaintiff, | Civil Action No. 2:15-cv-01100-JRG |
| v. | **CONSOLIDATED LEAD CASE** |
| **BLU PRODUCTS, INC.,** *et al.*, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## PLAINTIFF MORPHO KOMODO LLC'S
## REPLY CLAIM CONSTRUCTION BRIEF

i

Plaintiff Morpho Komodo LLC ("Plaintiff") submits this Reply Claim Construction Brief in response to Defendants Dell, BLU Products, Infosonics, and PCS Wireless' (collectively, "Defendants") Response Brief (Dkt. NO. 142) regarding disputed terms and phrases of the asserted claims of U.S. Patent Nos. 7,725,725 (the "'725 Patent"), U.S. Patent No. 7,350,078 (the "'078 Patent"), and U.S. Patent No. 8,429,415 (the "'415 Patent") (collectively, the "Patents-in-Suit").

I.   INTRODUCTION

Plaintiff believes this Court's claim construction from the prior *Tierra Intelectual Borinquen* litigation were proper and should be adopted. The "new" issues raised by Defendants should not change carefully considered constructions as Defendants' proposed constructions merely adds confusion. Although this Court is not bound by its own prior construction, this Court should certainly give deference to its own carefully considered constructions. Despite Defendants' attempts to twist Plaintiff's arguments and evidence, Plaintiff has proposed constructions consistent with the plain and ordinary meaning as well as with the specification. On the other hand Defendants numerously attempt to inject improper limitations – a number of which are inconsistent with the intrinsic record - merely to further their own non-infringement arguments.

Plaintiff has not misunderstood the key features of the Patents-in-Suit. It is Defendant, rather, who fails to grasp that the claims are not limited by a specific embodiment disclosed in the Patents-in-Suit. Rather, the claims should be interpreted by their plain and ordinary meaning, while taking guidance from the intrinsic record.

With regards to the terms Defendants purport to be indefinite, under the Supreme Court's *Nautilus* standard, the Federal Circuit still found the claims in *Nautilus* to be definite. Likewise here, the disputed claim terms under the Supreme Court's standard are sufficient to notify those skilled in the art about the scope of the invention and as such are not indefinite.

1

## II.     AGREED CONSTRUCTIONS

With respect to the Agreed Constructions, Plaintiff acknowledges Defendants for identifying the unintentional error from "preset" to "present" in the agreed upon constructions.

## III.    THE DISPUTED CLAIM TERMS

### A.    A "Computer" is not Limited to a "Laptop or Desktop Computer" and Should be Properly Defined According to the Intrinsic Record.

| Plaintiff | Defendants |
|---|---|
| "a device having a processor, a memory, one or more devices with retention medium(s), and having the capacity to receive input from one or more input devices" | "a laptop or desktop computer" |

Defendants' attempt to limit "computer" to a specific embodiment should be rejected. The animal metaphors and Euler diagram do not advance their non-infringement argument.

With regards to Defendants' claim differentiation argument, the term "computing device" is used only with respect to the '415 Patent. In fact, claim 1 of the '415 Patent specifically claims a "computing device which provides secure access" as follows:

1. A computing device which provides secured access, the computing device comprising:
   a program memory;
   a data storage memory;
   first and second input devices both of which are part of the computing device and are selectable by a user via the computing device to allow the user to generate a reference signature that can be compared to a future submitted signature for authentication purposes to allow it to be determined whether access to the computing device should be granted based on the user selection, wherein at least one of the first and second user selectable input devices is of a type of input device other than a keyboard;
   a processor operatively interfaced with the program memory, the data storage memory, and the first and second user selectable input devices;
   a first set of instructions stored in the program memory that, when executed by the processor, allow a user to select at least one signal type, among at least two different user selectable signal types, to be received and stored in the memory, the at least two different signal types being associated with the first or second user selectable input devices;
   a second set of instructions stored in the memory that are adapted to be executed after the first set of instructions has been executed, the second set of instructions, when executed by the processor, causing
   (a) input data of at least one signal type from the user selected one of the first and second input devices to be generated and then recorded in the data storage memory,
   (b) a reference signature to be created which comprises in part at least a portion of the input data recorded in the data storage memory, and
   (c) the reference signature to be stored in the data storage memory; and
   a third set of instructions stored in the program memory that are adapted to be executed after both the first and second sets of instructions have been executed, the third set of instructions, when executed by the processor, retrieving the reference signature from the data storage memory and comparing it to a subsequent signature submission signal to allow a determination to be made as to whether or not access to the computing device should be granted.

2

This defined "computing device" is limited in claim 2 as a "computer" and then further limited in claim 3 as a "desktop computer." '415 Patent, Claims. This claim differentiation merely serves to reemphasize the fact that a "desktop computer" is considered a "computer" which is further considered a computing device, both of which are not inconsistent with the specification and Plaintiff's opening brief. The fact that claim 4 states that "computing device" can be a "hand-held computing device" does not explicitly or implicitly limit a "computer" to a "laptop or desktop computer" but only explicitly state that a "hand-held computing device" is an embodiment of a "computing device." In fact, using Defendants' Euler diagram example, it **may also** be properly redrawn as follows:



Nothing from the specification or the claims preclude what's described in the diagram above. Neither the specification nor claims include language that excludes "hand-held or embedded devices" from "computer" nor do the claims explicitly excluded "hand-held computing device" from "computer." Defendants' arguments to exclude "hand-held or embedded devices" from "computer" serve only to manufacturer a non-infringement argument, but should be rejected as being an overly narrow limitation.

Second, under Defendants' proposed construction, "computer" would be construed as any laptop or desktop (or networked) computer without actually defining computer. This construction

is inconsistent with the invention of the Patents-in-Suit as a thin-client or dumb terminal which are considered laptop/desktop/networked computers but which may not include a processor would fall under this construction. As stated in the opening brief, Defendants' construction is improper as its proposed construction only limits the type of computer, but does nothing to actually define the term "computer" as its construction contains the exact term it attempts to construe and fails to provide actual context to what is required to operate within the scope of the invention.

    **B.    This Court Should Reject the Single Transmission Limitation as its Confusing and too Limiting.**

| Plaintiff | Defendants |
|---|---|
| *This term was previously construed by this Court*<br><br>"a set of related software-recognizable data which results from user input into the computer via an input device" | "a set of related software-recognizable data **from a single transmission** from an input device" |

Defendants' argue that they are "proposing a construction that was not previously presented to the Court. However, this is incorrect. Defendants in *Tierra* has already made a similar argument, as the Court stated "Defendants emphasize the disclosure that '[a] signal 2 is a set of related software-recognizable data from a <u>single transmission</u> 1.' (*Id.* (quoting '078 Patent at 3:29-30).)" – Markman Order at 9 citing Defendants' Responsive Brief at 21 (emphasis added). This argument was raised in an attempt to limit the claim term to a "single input" and the argument was rejected as it "unclear and is potentially too limiting." Markman Order at 13. Likewise, adding the limitation "single transmission" is also unclear and too limiting.

    In Plaintiff's Opening Brief, the proposed construction inadvertently left out the language "into the computer" from the Court's prior construction. Plaintiff submits the proper construction is the literal construction from the prior Markman order. The phrase "which results from user input into the computer" is not confusing to a jury as the specification is clear that the signal results

4

not just from an input device (which could be non-user input such as machine automated), but that it must be from user input into the computer via an input device.

### C. Adding Limitations of "gradually" and "discretely" to "Measurable Variable Input" Only Adds Confusion to a Properly Construed Term.

| Plaintiff | Defendants |
|---|---|
| *This term was previously construed by this Court* <br><br> "an input quantity that can vary and that must be measured, as opposed to an input that is distinctly identifiable" | "an input quantity that can **gradually** vary and that must be measured, as opposed to an input that is **discretely** identifiable" |

Despite all of Defendants' arguments, there is still no valid explanation as to why the limitation "gradually" should be imposed on the claim term. In Defendants' footnote, they explain that "gradually" is intended to mean "vary by gradations." Response Motion at 14, fn. 5. This additional limitation does not add any clarity to the construction of "measurable variable input." In fact, the addition of "vary by gradations" is far more confusing to a jury.

This Court's prior construction already distinguished between what is variably measured and what is distinctly identifiable. Defendants have not provided any valid reason why "distinctly" should be replaced with "discretely." Indeed, there is no confusion with the Court's prior construction since "variably measured" input is already contrasted with "distinctly identifiable" input – input which does not need to be measured, because the input is either the same or not the same as a stored signature.

As such, Plaintiff submits that this Court should adopt its previous construction and reject Defendants' proposed construction

5

### D. The Term "signature" Includes at Least one Transmission and the Addition of "to a computer" is Unnecessary.

| Plaintiff | Defendants |
|---|---|
| *Previously agreed upon by Tierra, HTC, Toshiba and Adopted by this Court* <br><br> "at least one transmission intended as a security precaution to preclude unauthorized access" | "a transmission intended as a security precaution to preclude unauthorized access to a **computer**" |

With respect to "signature," the patentee acted as his own lexicographer and defined signature as "at least one transmission intended as a security precaution to preclude unauthorized access" '708 Patent, 3:65-66. This is further supported by the claims. There is no limitation of "precludes unauthorized access to a *computer*" anywhere in the claims. The claims recite only that "a signature" is created "for subsequent authentication" (e.g. precluding unauthorized access). Furthermore, as the patentee has already defined "signature" as "at least one transmission…" which is broader than "a [single] transmission," Defendants' narrowing construction should be rejected.

### E. There is no Concern of "implicit or unintentional input" with Respect to the Term "input device"

| Plaintiff | Defendants |
|---|---|
| *Input Device* <br><br> *Previously agreed upon between Tierra, HTC, Toshiba and Adopted by this Court* <br><br> "a device by which a user enters input into a computer system" <br><br> *User-Selected device/user-selected input device* <br> "device selected by the user by which the user enters input into a computer system" | *Input Device* <br> "a device by which a user enters **explicit** input into a computer system" <br><br><br> *User-Selected device/user-selected input device* <br> "an input device selected by the user" |

6

Defendants' argue that to get over prior art, the patentee disclaimed "implicit input." However, when read correctly, the patentee actually stated that "if the user was free to choose the signal types, as claimed by the instant invention herein, there would be no implicit input." Response Brief, Ex. A at MK-BLU_ 396-97. This statement refers to the fact that the user chooses the signal type to input. There is no debate that this invention requires a user to choose the signal type. However, the limitation proposed by Defendants' does not reflect a user choice of signal but merely confuses the jury by changing the plain and ordinary word of "input device." As such, Defendants' construction should be rejected.

### F.  The "wherein terms" Sufficiently Inform One Skilled in the Art of the Invention and are therefore not Indefinite.

As has been made plain by both the Supreme Court and the Federal Circuit, the proper standard regarding definiteness is to "inform those skilled in the art about the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014); *see also Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F. 3d 1374, 1379 (Fed. Cir. 2015)("[W]e may now steer by the bright star of 'reasonable certainty,' rather than the unreliable compass of 'insoluble ambiguity'"). The "wherein" terms are not indefinite and require no construction as they can easily be understood with reasonable certainty in light of the specification.

However, Plaintiff has also proposed four constructions consistent with the plain and ordinary meaning of the four terms if additional explanation to a lay jury is necessary.

### 1.  *"wherein creating said signature using recorded signals from a plurality of signal types"*

| Plaintiff | Defendants |
|---|---|
| No Construction Necessary<br><br>Or in the alternative:<br><br>"wherein creating said signature based at least in part upon at least a portion of said | Indefinite |

7

| | |
|---|---|
| stored recording comprises using recorded signals from a plurality of signal types." | |

The specification provides clear guidance that claim term "wherein creating said signature using recorded signals from a plurality of signal types" means that a signal may be created from multiple signal types. '725 Patent, Fig. 10 (depicting creation of signature from multiple signal types); *See also* Opening Brief at 14. The claims are easily understood with reasonable certainty in light of guidance from the specification to one skilled in the art and no construction is necessary. In the alternative the Court should adopt the construction proposed by Plaintiff. *See* Opening Brief at 14.

**2.** "wherein passively terminating said recording"

| **Plaintiff** | **Defendants** |
|---|---|
| No Construction Necessary<br><br>Or in the alternative:<br><br>"wherein terminating said recording comprises passively terminating said recording" | indefinite |

Similarly, the specification is more than sufficient to inform one skilled in the art of the scope of "wherein passively terminating said recording" with reasonable certainty. The specification is replete with examples as Plaintiff has already shown. *See Id.* at 15. No construction for this term is necessary, but should the Court be inclined, Plaintiff submits that the Court should adopt the construction proposed by Plaintiff. *See* Opening Brief at 15.

**3.** "wherein recording a plurality of signal types for at least one user-selected device"

8

| Plaintiff | Defendants |
|---|---|
| No Construction Necessary<br><br>Or in the alternative:<br><br>"wherein recording user input signals by type from at least one user-selected device comprises recording a plurality of signal types for at least one user-selected device." | indefinite |

Similarly, the claim term "wherein recording a plurality of signal types for at least one user-selected device" would be easily understood in light of the specification and more than sufficient to inform one of skill in the art of the scope of the invention with reasonable certainty. The specification makes clear that recording user input signals by type from at least one user-selected device includes being recorded from multiple signal types. *Id.* at 15-16. As such, no construction is necessary. Again, should the Court choose to construe for clarity, plaintiff the Court should adopt the construction proposed by Plaintiff. *Id.* at 17.

4.  *"wherein said recording comprises a plurality of user-selected devices"*

| Plaintiff | Defendants |
|---|---|
| No Construction Necessary<br><br>Or in the alternative:<br><br>"wherein said recording comprises signal types from a plurality of user-selected devices" | indefinite |

Again, the claim term "wherein said recording comprises a plurality of user-selected devices" would be easily understood in light of the specification and, is sufficient to inform a person of skill in the art of the scope of the invention with reasonable certainty. The specification makes plain that the computer login comprises "any user-determined submission, including a plurality of transmissions for which submission may be passively terminated," it includes specific examples of a plurality of user selected devices for input, and makes clear that the user may select

9

which signal types can be used for validation as part of account creation. '078 Patent at Col. 1, 44-47, Col. 3, 30-36 and, Col. 5, 1-19. The claim language, considered in view of the specification, is sufficient to meet the reasonable certainty standard.

As such, the term should be easily understood and no construction is necessary. In the alternative the Court should adopt the construction proposed by Plaintiff. Opening Brief at 18.

### IV. CONCLUSION

The ordinary meaning of the claim terms controls. The terms are easily understood claim language and solidly supported by the intrinsic evidence. Defendant's proposed constructions improperly, and repeatedly, attempt to restrict claim terms, add requirements that are not supported by the intrinsic evidence, and import exemplary embodiments into the clear claims. These attempts should be rejected.

Dated: April 26, 2016                    Respectfully submitted,

By: /s/ *Hao Ni*
Hao Ni
Texas Bar No. 24047205
hni@nilawfirm.com
Timothy T. Wang
Texas Bar No. 24067927
twang@nilawfirm.com
Neal G. Massand
Texas Bar No. 24039038
nmassand@nilawfirm.com
Stevenson Moore V
Texas Bar No. 24076573
smoore@nilawfirm.com
Krystal L. McCool
Texas Bar No. 24082185
kgibbens@nilawfirm.com

Ni, Wang & Associates, PLLC
8140 Walnut Hill Ln., Ste. 500
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

**ATTORNEYS FOR PLAINTIFF
MORPHO KOMODO LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's ECF system per Local Rule CV-5(a)(3).

*/s/ Hao Ni*
Hao Ni