1

```
 1              UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF TEXAS
 2                   MARSHALL DIVISION


 3
     MORPHO KOMODO, LLC        |  DOCKET NO. 5:15CV1100
 4                             |
                               |  MAY 18, 2016
 5   VS.                       |
                               |  9:06 A.M.
 6                             |
     BLU PRODUCTS, INC, ET AL  |  MARSHALL, TEXAS
 7
     -------------------------------------------------------
 8
                 VOLUME 1 OF 1, PAGES 1 THROUGH 49
 9
         REPORTER'S TRANSCRIPT OF CLAIM CONSTRUCTION HEARING
10
                 BEFORE THE HONORABLE ROY S. PAYNE
11               UNITED STATES MAGISTRATE JUDGE

12   -------------------------------------------------------

13


14   APPEARANCES:

15   FOR THE PLAINTIFF:     HAO NI
                            NI, WANG & MASSAND
16                          8140 WALNUT HILL LANE
                            SUITE 500
17                          DALLAS, TEXAS 75231


18
     FOR BLU PRODUCTS:      BERNARD LEWIS EGOZI
19                          EGOZI & BENNETT
                            2999 NE 191ST STREET
20                          SUITE 407
                            AVENTURA, FLORIDA 33180
21


22   FOR PCS WIRELESS:      BLAKE DIETRICH
                            JACKSON WALKER
23                          2323 ROSS AVENUE
                            SUITE 600
24                          DALLAS, TEXAS 75201

25
```

1  COURT REPORTER:          TONYA B. JACKSON, RPR-CRR
                           FEDERAL OFFICIAL REPORTER
2                          300 WILLOW, SUITE 239
                           BEAUMONT, TEXAS  77701
3

4

5

6     PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
      TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              INDEX

2                                                    PAGE

3

4    "INPUT DEVICE"                                 5

5    "SIGNAL"                                        6

6    "COMPUTER"                                      8

7    "MEASURABLE VARIABLE INPUT."                    19

8    "SIGNATURE."                                    29

9    "WHEREIN" CLAUSES                               35

10   "WHEREIN SAID RECORDING COMPRISES A PLURALITY   42
     OF USER-SELECTED DEVICES"

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1           (OPEN COURT, ALL PARTIES PRESENT)

2           THE COURT:  For the record, we're here for the

3  Claim Construction Hearing in *Morpho Komodo versus BLU*

4  *Products, et al*, Case No. 2:15-1100 on our docket.

5           Would counsel state their appearances for the

6  record.

7           MR. NI:  Good morning, your Honor.  Hao Ni for

8  the plaintiff Morpho Komodo, LLC.

9           THE COURT:  All right.  Thank you, Mr. Ni.

10           MR. DIETRICH:  Good morning, your Honor.

11  Blake Dietrich on behalf of PCS Wireless, LLC.

12           MR. EGOZI:  Good morning, your Honor.  Bernard

13  Egozi on behalf of BLU Products, Inc.

14           THE COURT:  All right.  Thank you,

15  Mr. Dietrich and Mr. Egozi.

16           I'll state for the record that earlier this

17  morning we distributed to counsel a set of preliminary

18  constructions.  The purpose of those constructions is to

19  let counsel know where the court is after the initial

20  review of the pleadings in the record.  The preliminary

21  construction is not intended to dissuade either side from

22  arguing for whatever positions counsel think are

23  appropriate.  Rather, it's designed to allow you to focus

24  your arguments and your time where you think the court

25  may have most gone astray.  I do reserve the right to

09:06AM (line 5)
09:06AM (line 10)
09:06AM (line 15)
09:07AM (line 20)
09:07AM (line 25)

5

1 alter these constructions and not uncommonly do alter the

2 preliminary constructions based on the arguments received

3 at the hearing.  So, I hope that the parties will accept

4 them in that spirit.

09:08AM 5           Let me also say that I'm happy to take these

6 terms up in whatever order counsel think is most

7 efficient, but I would like to have the argument on a

8 term-by-term basis.

9           And with that, I'll turn it over to counsel.

09:08AM 10           MR. NI:  Thank you, your Honor.

11           We had discussed with defendants' counsel, I

12 believe they were going to take some of the terms first.

13 We are not going to have any arguments on the term "input

14 device," and we are narrowing the argument on the term

09:08AM 15 "signature" to just the additional limitation of

16 "unauthorized access to a computer" that defendants were

17 asking for.

18           THE COURT:  All right.  And I -- also -- that

19 reminds me.  I want to point out that the preliminary

09:09AM 20 construction on "computer," in addition to plain and

21 ordinary, should have included a notation that the court

22 intends at this point to reject the defendants' proposed

23 limitation to laptop and desktop computers.  So, that --

24 I'll tell you that as well for the purpose of your

09:09AM 25 argument.

6

1        But that's fine, and we can proceed in any

2   order that counsel wants to.  If you want to turn it over

3   to counsel for defendants first, that's fine.

4        Mr. Dietrich.

09:09AM  5        MR. DIETRICH:  Yes, your Honor.  And the

6   parties would thank the court for these preliminary

7   constructions.  Obviously they have helped in narrowing

8   some of the disputes already.

9        One particular point I'd like to draw out just

09:09AM  10  before we get into some of these more disputed terms is I

11  believe the parties have reached some form of an

12  agreement with respect to "signal," so long as both

13  parties are capable of sort of making a clarification or

14  asking the court for some additional guidance with

09:10AM  15  respect to the notation.

16       In particular, I believe defendants' position

17  is that this reading would preclude any further argument

18  that a signal can come from multiple transmissions.  It

19  would simply be the equivalent of stating that a signal

09:10AM  20  comes from a single transmission.  I understand that the

21  court has not used that language as defendants have

22  proposed.  However, subject to that clarification, I

23  believe defendants --

24       THE COURT:  The main reason not to use the

09:10AM  25  language is the -- as you pointed out in your briefing, I

7

1  think both sides recognize that the specification and the

2  claims use "transmission" in a way that is not perhaps

3  the most natural way; and, so, injecting that term into

4  the construction I think is counterproductive.

09:11AM   5              MR. DIETRICH:  Okay.  Well, then --

6              THE COURT:  But that is the -- your

7  understanding of the meaning of this construction is

8  correct.

9              MR. DIETRICH:  Well, and perhaps so long as we

09:11AM  10  can get affirmation from plaintiff's counsel that they

11  intend to honor that distinction and not argue that

12  "signal" can be broadcast on multiple transmissions, I

13  think we can accept that, your Honor.

14              THE COURT:  Okay.  This language and the full

09:11AM  15  reasoning will be in the claim construction order so --

16  and our intent is that the claim construction order will

17  govern the experts and the parties in their future

18  positions.  So, this would be a part of the construction

19  even though it's not in the language that we're proposing

09:12AM  20  be given to the jury.

21              MR. DIETRICH:  Yes, your Honor.

22              THE COURT:  But that's fine.

23              Mr. Ni, is that consistent with your

24  understanding?

09:12AM  25              MR. NI:  Yes.  Thank you, your Honor.  Yeah,

1    that's consistent.  We would agree that in expert reports

2    our expert wouldn't take the position that a single

3    signal can be communicated via multiple transmissions.

4            THE COURT:  Okay.  All right.  We will note

09:12AM  5    that agreement.

6            MR. DIETRICH:  Your Honor, I believe for the

7    rest of the hearing it might make sense just to go down

8    this list of terms from top to bottom.

9            THE COURT:  That's fine.

09:12AM 10            MR. DIETRICH:  So, with respect to

11    "computer" --

12            I'm sorry.  Ms. Andrews, would you mind --

13    thank you very much.

14            So, with respect to "computer," this slide

09:13AM 15    illustrates the parties' respective positions.

16    Plaintiffs have proposed that the construction be limited

17    to "a laptop or desktop computer."  Essentially this

18    dispute seems to boil down to whether a computer includes

19    handheld devices or other embedded devices.

09:13AM 20            Defendants' position is that a computer does

21    not include handheld devices, and that is predicated not

22    only on the specification's differentiation between

23    computers and computer-like handheld devices but also

24    based on claim differentiation based on a reading of the

09:13AM 25    '415 patent's claims.

1    So, in particular, with respect to the

2 specification, the specification explicitly discloses

3 here that Figure 1 is a block diagram of a desktop

4 computer which comprises a number of elements.  Moving

09:14AM  5 down to that same passage, just a few lines later the

6 specification describes that "The described software may

7 be employed on such a computer 100," i.e., drawing to

8 that same referential number.  "As well, the software

9 described may find application in other computer-like

09:14AM 10 devices requiring secured access, including handheld

11 devices or embedded devices."

12    Your Honor, defendants' position is that by

13 indicating that handheld devices and embedded devices are

14 computer-like, the patent owner here has stated that they

09:14AM 15 are not in fact computers.  So, if I were to describe

16 quail as having a chicken-like texture, I don't think

17 anyone would reasonably consider my statement to mean

18 that chicken and quail are the same thing or that quail

19 is a subset of chicken.  They have similar

09:15AM 20 qualifications, but they are in fact different things.

21    THE COURT:  But isn't it just as consistent to

22 read this language as saying that computer-like devices

23 may include devices that are handheld or embedded, as

24 opposed to saying that no handheld device or embedded

09:15AM 25 device is a computer?

Claim Construction Hearing 5-18-2016

10

1      MR. DIETRICH:  I think the positions are

2 distinguishable, your Honor, simply -- not just based on

3 this language but also as we proceed to the next argument

4 with respect to claim differentiation.  So,

09:15AM  5 independently, yes, I would tend to agree that one could

6 make the argument that handheld devices and desktop

7 computers such as the one described in Figure 1 have

8 similar qualifications.  They might have identical

9 components.  However, they are distinct things, as

09:16AM 10 embodied or shown by that "computer-like" qualification.

11 So, while they may have similar components, they are in

12 fact distinct objects, as the patent owner considered

13 them to be.

14      THE COURT:  Do you agree that a computer can

09:16AM 15 be handheld?

16      MR. DIETRICH:  I believe a laptop computer is

17 certainly handheld, your Honor.

18      THE COURT:  Are there other computers that can

19 be handheld?

09:16AM 20      MR. DIETRICH:  There may in fact, but I don't

21 think as considered by the patent owner here that that

22 was the qualification.  So, a computer could be made

23 significantly smaller; however, as qualified here,

24 handheld devices are not particularly just small

09:16AM 25 computers.  They are a separate qualification of

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 11 of 49 PageID #: 1068
Claim Construction Hearing 5-18-2016

11

1 computer-like devices which fall under the general

2 category of "computing devices."  So, I think the '415

3 patent really draws on this distinction.

4        THE COURT:  All right.

09:17AM 5        MR. DIETRICH:  So, looking at the '415 patent,

6 we have four claims.  We have independent claim 1 and

7 then three dependent claims which depend therefrom.  So,

8 independent claim 1 claims "a computing device which

9 provides secured access, the computing device

09:17AM 10 comprising"; and then there's a number of components

11 recited thereafter.

12        Dependent claim 2 specifically states that

13 that computer device comprises a computer.

14        So, what we have effectively is we have the

09:17AM 15 beginning of an inverse triangle definition whereby

16 "computing device" is getting narrowed.  So, we're honing

17 in to the specific geniuses within the larger family of

18 computing devices.

19        Dependent claim 3 really brings this home.  It

09:17AM 20 says that the computer further comprises a desktop

21 computer.

22        Most tellingly, however, dependent claim 4

23 does not claim dependency based on dependent claim 2

24 which is the qualification that the computing device is a

09:18AM 25 computer.  It very easily could, as shown by dependent

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 12 of 49 PageID #:  1069
Claim Construction Hearing 5-18-2016

12

1    claim 3.  However, it goes back all the way to the top,

2    the family.  It says that the computing device comprises

3    a handheld computing device.

4           I believe by making this distinction we can

09:18AM  5    draw the subsequent diagram which plaintiffs *[sic]* have

6    prepared.  In this diagram we show that the larger

7    family, this computing device, is represented by

8    independent claim 1.  Within this larger family we have

9    dependent claim 2 which shows that the computing device

09:18AM  10   further comprises a computer.

11          I believe my clicker is not appearing on the

12   screen, but I believe your Honor can see the yellow

13   depiction on the screen.

14          THE COURT:  Yes.

09:18AM  15          MR. DIETRICH:  Within dependent claim 2,

16   within the definition of "computer," we have "desktop

17   computers."

18          However, then we start over again with

19   dependent claim 4 and say that computing devices comprise

09:19AM  20   handheld computing devices.

21          I believe drawing upon the distinction in the

22   specification as well as the claim differentiation shown

23   in the dependent claims of the '415 patent, there's clear

24   evidence here that the patent owner considered computers

09:19AM  25   and computing-like handheld devices -- computer-like

Claim Construction Hearing 5-18-2016

13

handheld computing devices to be distinct objects.  So,

while there may be some overlap -- i.e., they fall within

the same family -- they are in fact distinct objects.

THE COURT:  Tell me how it's inconsistent with

09:19AM  claim differentiation for a handheld device to also be a

computer.

MR. DIETRICH:  Well, your Honor, I think the

distinction that the defendants are trying to draw upon

is why would -- if -- knowing proper claim construction

09:20AM  strategy -- i.e., that a dependent claim is claiming to a

secondary dependent claim -- in the preceding claim --

so, dependent claim 3 immediately preceding dependent

claim 4 draws on that very point which is that a computer

includes specific types of computers, i.e., a desktop

09:20AM  computer.  However, the patent owner explicitly decided

not to take that same tactic when it came to handheld

devices or handheld computing devices.  And I believe

that distinction, as the doctrine of claim

differentiation will show, is important.  It is of some

09:20AM  importance in this consideration.

THE COURT:  You're arguing that the patentee

could have drafted his claims differently.  I understand

that.  But I don't think there's any doctrine that

requires that the court read claim 4 as relating in any

09:21AM  particular way to the other dependent claims that it

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 14 of 49 PageID #:  1071
Claim Construction Hearing 5-18-2016

14

1    doesn't reference.

2              MR. DIETRICH:  I understand, your Honor; and I

3    believe -- I believe the argument could be made that they

4    have the same components or that they have very similar

09:21AM   5    characteristics, which is why they are computer-like and

6    why they fall within this same general family.

7              However, I believe the case cited by

8    defendants in their brief, which is *Tandon Corp. v. U.S.*

9    *International Trade Commission*, states that (reading) to

09:21AM  10    the extent that the absence of such a difference in

11    meaning and scope would make a claim superfluous, the

12    claim of -- the doctrine of claim differentiation states

13    that the presumption that the difference between claims

14    is significant.

09:22AM  15              So, I believe using that distinction, if

16    handheld computer device is no different than a computer

17    or falls within the same penumbra, why then not claim

18    that same distinction -- that same dependency that

19    dependent claim 3 relies upon.

09:22AM  20              THE COURT:  Well, why isn't this just as

21    consistent that computing device is broader than computer

22    but that a handheld device can be either a computing -- a

23    handheld computing device or a handheld computer, that

24    either a computer or a computing device can be handheld?

09:22AM  25    How is there anything in the specification or the claims

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 15 of 49 PageID #:  1072
Claim Construction Hearing 5-18-2016

15

1  that excludes that?

2            MR. DIETRICH:  Well, again, your Honor, I

3  think the most pertinent evidence is the patent owner's

4  own words that handheld devices are computer-like.

09:23AM  5            THE COURT:  All right.  I just disagree that

6  he said handheld devices are computer-like.  He just said

7  that computer-like devices may include handheld devices,

8  not all handheld devices but handheld devices.  You're

9  wanting me to read it as all handheld devices are

09:23AM 10  computer-like.  I mean, he could have said like all kinds

11  of other subsets, like battery-operated or like anything

12  else.  He didn't say -- I don't read anything in that to

13  say that all handheld devices are computer-like.  And

14  that's what I'm missing to accept your argument.

09:24AM 15            MR. DIETRICH:  Yes, your Honor.

16            I think -- it appears that the court

17  understands defendants' position here.

18            THE COURT:  All right.

19            MR. DIETRICH:  To the extent that there's a

09:24AM 20  disagreement --

21            THE COURT:  I'm not trying to get you to

22  abandon your position.  I understand that.

23            MR. DIETRICH:  No, sir.  But I think one

24  qualification I will make is that defendants acknowledge

09:24AM 25  in their briefing that computers might be broader than

Claim Construction Hearing 5-18-2016

16

desktop or laptop computers, and it's not our attempt to

unnecessarily limit here.  So, I think -- I think

defendants would be willing to concede to a plain and

ordinary meaning with the qualification that handheld

09:24AM 5 devices -- handheld or embedded devices are computer-like

devices as opposed to falling specifically within that

"computer" definition.

8            THE COURT:  All right.  I do understand that,

but I believe that handheld devices cross both computer

09:25AM 10 and computer-like devices.  I think if I was going to use

your Venn diagrams I would have the green diagram you

have for handheld computing device overlap with the

orange circle you have for computers.  But I understand

your argument.

09:25AM 15            MR. DIETRICH:  Yes, your Honor.  Unless the

court has any additional questions, I believe...

17            THE COURT:  I don't on that point.

18            Mr. Egozi, do you want to be heard separately

on that?

09:25AM 20            MR. EGOZI:  I would just add -- do you want me

to approach the lectern?

22            THE COURT:  Yeah.  If you want to, go ahead.

And then I'll let Mr. Ni respond.

24            MR. EGOZI:  I would only add, your Honor, that

09:26AM 25 there are some handheld devices that do no computing

Case 2:15-cv-01100-JRG-RSP  Document 155  Filed 05/27/16  Page 17 of 49 PageID #:  1074
Claim Construction Hearing 5-18-2016

17

1    whatsoever.  For instance, BLU has a large line of

2    handheld devices that are simply called "feature phones"

3    or "feature devices" which simply allow somebody to make

4    a telephone call or to send a text and nothing else and

09:26AM  5    no computing is allowed.  That's all I would add, your

6    Honor.

7              THE COURT:  And the little green circle is not

8    all handheld devices.  It's just handheld computing

9    devices.  But I agree that if it was just handheld

09:26AM  10   devices, it would go outside the blue circle as well as

11   inside the yellow circle.  So, I -- but I understand your

12   point.

13             MR. EGOZI:  Thank you, your Honor.

14             THE COURT:  Thank you.

09:26AM  15             MR. NI:  Thank you, your Honor.

16             Plaintiff doesn't really have that much more

17   to add to the court's construction for the term

18   "computer."  And we agree with the way the court would

19   have drawn the Venn diagram as well.

09:26AM  20             And in particular, you know, defendants'

21   argument on the '415, as the court articulated, it's not

22   a, you know, if -- if one is more limiting than the other

23   and one is limiting that one.  Something else that's

24   limited to computing device is not limited to a more

09:27AM  25   narrow category or excluded from that category because it

18

1    wasn't claimed that way.

2         Don't have any additional comments for this

3    term unless the court has any questions.

4         THE COURT:  All right.  I don't have any

09:27AM   5    questions, Mr. Ni.

6         And I guess there was one other question,

7    Mr. Dietrich, that I wanted to ask; and that is I didn't

8    get the impression from the briefing that there was any

9    other dispute as to the meaning of "computer."  I got the

09:27AM  10    understanding that it was really all about the arguments

11    that you presented about whether handheld devices would

12    be excluded.

13         MR. DIETRICH:  I believe that's correct, your

14    Honor; and I believe that goes to defendants' point which

09:27AM  15    is that I believe we can adopt a plain and ordinary

16    meaning.  However, defendants would still respectfully

17    show that handheld computing devices and embedded devices

18    do not fall within that plain and ordinary meaning.

19         THE COURT:  Okay.  I understand your position,

09:28AM  20    and I just wanted to get that on the record before we

21    moved off of "computer."

22         MR. DIETRICH:  Yes, your Honor.

23         THE COURT:  All right.  Thank you,

24    Mr. Dietrich.

09:28AM  25         MR. DIETRICH:  So, your Honor, with respect to

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 19 of 49 PageID #:  1076
Claim Construction Hearing 5-18-2016

19

1    the next disputed term -- I believe we can skip "signal."

2    We've already addressed that term.

3             The next disputed term would be "measurable

4    variable input."  Again, the court has previously

09:28AM  5    construed this term in what I'll deem the TIB order.  I

6    don't believe defendants' position is that that

7    construction was wrong or that it was erroneous.  I

8    believe that what needs to be done to honor that, the

9    true intended function or the true intended meaning of

09:29AM 10   that construction, is to add two small variations to that

11   construction.

12            In particular, I believe the key disputes here

13   are whether a measurable variable input must gradually

14   vary and then, second, whether other inputs -- i.e.,

09:29AM 15   nonmeasurable variable inputs -- are distinctly or

16   discretely identifiable.

17            So, with respect to this discussion, I believe

18   it bears a general discussion of the background of these

19   patents.  So, the specifications describe historic

09:29AM 20   methods of verifying and authenticating signatures.  In

21   particular, the patents discuss character-based passwords

22   which were subject to absolute variation.  Either you

23   typed in the password correctly or you didn't.  There's

24   no middle ground.  It's either yes 100 percent correct or

09:30AM 25   no zero percent correct, no authentication.

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 20 of 49 PageID #:  1077
Claim Construction Hearing 5-18-2016

20

1            In contrast, the specifications also describe

2       these measurable variable inputs which require some

3       tolerance for validation.  These are more difficult to

4       exactly replicate.  For example, a mouse movement,

09:30AM  5       drawing a square, one wouldn't be expected to exactly

6       draw the exact same square.

7            Now, although these character-based passwords

8       and measurable variable inputs are both capable of

9       varying, it's that type of variance that the court drew

09:30AM 10       on and that is really at the crux of this invention.

11            In particular, with respect to character-based

12       passwords, we've discussed it's an absolute yes or no.

13       There is no middle ground.  You can't get close to typing

14       your password and then fall within some tolerance.  It is

09:30AM 15       either you 100 percent did it or you didn't.  With

16       respect to the character -- or to the more volatile

17       measurable variable inputs, the gradual variance, the

18       small, minute differences that are not exactly the same

19       but fall within that tolerance are acceptable; and that's

09:31AM 20       what the patents really describe here.  And I believe

21       that's what the court was drawing upon with its earlier

22       distinction.

23            However, I don't believe plaintiff's

24       application of the court's earlier construction is

09:31AM 25       correct; and I believe that's why defendants are asking

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 21 of 49 PageID #:  1078
Claim Construction Hearing 5-18-2016

21

1    for additional clarification as to the gradual variance.

2                In particular -- and these two points are

3    fairly intimately tied.  Plaintiffs are drawing on a

4    construction to show that certain keystrokes and the

09:32AM   5    timing between those keystrokes are both measurable and

6    variable inputs, and that comes directly from the

7    briefing on this subject.

8                Ms. Andrews, can I go to the -- thank you very

9    much.

09:32AM  10                So, in particular, we have here -- I've

11    highlighted it on the screen.  It's -- this is directly

12    from the briefing.  It says, "The specification discloses

13    various examples of measurable signals.  In a keyboard,

14    for example, typing a word may yield signals for the

09:32AM  15    entered keys and the timing between keystrokes.  In that

16    case, the keys and timing between the keystrokes are both

17    'measurable' because they can be measured and converted

18    into signals."

19                I'll go now to the TIB order.

09:33AM  20                THE COURT:  Is your concern that the

21    plaintiffs are arguing that a mere password can be a

22    measurable variable input?

23                MR. DIETRICH:  Well, our key concern, your

24    Honor, is that variance -- just simply stating that the

09:33AM  25    measurable variable input can vary is not necessarily

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 22 of 49 PageID #:  1079
Claim Construction Hearing 5-18-2016

22

enough to distinguish between nonmeasurable variable

inputs.  So, the variance is not simply the ability to

vary.  It's the ability to vary without a finite amount

of limitations.

09:33AM    So, in the TIB order here, we have the court

explicitly saying that (reading) the significance of

being measurable is evident from the above-quoted portion

of the background which discloses that measured

characteristics are different from distinctly

09:34AM identifiable inputs such as key characters.

Well, again we go back to plaintiff's opening

brief and they've failed to acknowledge and they've

failed to adhere to that distinction.  They've in fact

said that key characters, keystrokes, are measured

09:34AM characteristics.

And again, I believe the point to be made is

that measurable variable inputs can gradually vary.  They

have the ability to fall within a range of tolerance and

be accepted, whereas keystrokes -- so, for example,

09:34AM looking at the letters J and K on your keyboard, you

can't type something in between those two characters.

You can either type J and K, you could type J or K, or

you could type neither.  In either event, there are

discrete values for those terms -- they're not

09:35AM measured -- whereas a mouse movement, timing, these sorts

23

1  of measurable variable inputs, do not have those same

2  discrete identification.

3          In fact, defendants would suggest that really

4  any difference can be a distinct difference or a distinct

09:35AM  5  identification.  However, that discrete value is really

6  what separates measurable variable inputs from other

7  nonmeasurable variable inputs.

8          THE COURT:  All right.  I know there are two

9  separate arguments here; and I follow your first

09:35AM  10  argument, I believe.  The difference between "distinct"

11  and "discrete" I'm not sure I follow.

12          MR. DIETRICH:  Okay.  Ms. Andrews, if we could

13  go back to the slides, if you would.

14          Again -- and I apologize.  I think the easiest

09:35AM  15  argument -- or the easiest example I can think of is,

16  again, a keystroke.  So, the letter J on your keyboard.

17  It has value as the letter J, but that is how it is

18  distinctly identifiable.  However, the court has said --

19  I apologize.  Let me backtrack here for just one second.

09:36AM  20          So, the letter P, as we've shown here, is

21  either pressed or it is not.  It has a discrete value as

22  either 1 being pressed or 0 not being pressed.  There's

23  no middle ground in there.  Those are distinct values;

24  however, they are also discrete values.

09:36AM  25          Whereas you look at a mouse movement, for

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 24 of 49 PageID #: 1081
Claim Construction Hearing 5-18-2016

24

1  example, moving a mouse, if you're slightly different, it

2  would still have a distinct identification.  It would be

3  different.  It would be a measurable difference.

4  However, the point to be made is that that mouse movement

09:36AM  5  can fall within an infinite series of variations.

6  There's no discrete values.  It's not 1 or 0.  It is

7  anywhere between 0 and 1 or any infinite range of values.

8            And I believe we're not -- or defendants are

9  not trying to inject some hypertechnical, sophisticated

09:37AM  10  engineering value or computer science specific value

11  here.  What we are trying to show is that the types of

12  characteristics that were not measurable variable are

13  limited to discrete values.  Either J is pressed or it's

14  not.  Either K is pressed or it's not.  You can't have

09:37AM  15  something in the middle.  Those are discrete values.  And

16  I believe that distinction is more in line with what the

17  patent owner had in mind when drafting these claims and

18  what the previous -- the court decided in the previous

19  order.

09:37AM  20            THE COURT:  Well, I guess part of my concern

21  about your proposal is that it injects terms that

22  themselves are unclear, such as "gradually" and

23  "discrete."  I -- I mean, you in your proposed

24  construction offer by footnote a construction of

09:38AM  25  "gradually"; and the distinction you're making between

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 25 of 49 PageID #:  1082
Claim Construction Hearing 5-18-2016

25

1    "distinctly" and "discretely" is certainly a fine -- by

2    that I mean a difficult distinction.

3              And I'm thinking it's easier perhaps to

4    approach this by ruling out what you're concerned about

09:38AM  5    as opposed to trying to define it in.  Is there something

6    other than a typed password that you're concerned the

7    plaintiff is trying to include in the meaning of this

8    term?

9              MR. DIETRICH:  I believe that's our primary

09:39AM 10    concern.  Counsel for BLU might have additional points to

11    be made on this, but I believe the key distinction here

12    is that distinct values are keystrokes or typed

13    passwords, whereas measurable variable inputs explicitly

14    do not include those, those types of inputs.  And what I

09:39AM 15    would like to just stress is that based on plaintiff's

16    opening brief, it appears that that distinction doesn't

17    carry the same merit as it was intended to based on the

18    court's previous order.  And I believe that is all

19    defendants are trying to emphasize in this construction.

09:40AM 20              THE COURT:  And I will try and draw that out

21    when I'm hearing from Mr. Ni.

22              One thing that concerns me about your argument

23    was in the brief at -- I guess it's page 14 of your

24    brief.  When you're talking about this "gradually"

09:40AM 25    limitation, you say "However, measurable characteristics

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 26 of 49 PageID #:  1083
Claim Construction Hearing 5-18-2016

26

described in the specification can, and often do, vary

gradually."

How can we build into the construction

something that you say is just "often" present?

09:40AM  MR. DIETRICH:  Well, I believe, your Honor,

what we're doing is we're saying that they can -- I

believe the proposed construction -- and I will pull it

up right now.  Defendants' proposed construction is "an

input quantity that can gradually vary."  So, we're not

09:41AM saying that it must gradually vary.  It's simply the

ability to gradually vary.  And I believe that's in line

with what the patents state, wherein these are difficult

to exactly replicate.  You could theoretically.  I mean,

it's the odds of drawing a perfect circle freehand.

09:41AM Right?  I mean, theoretically it is possible.  However,

it's unlikely.  So, to the extent that you do it once,

you might not be expected to exactly replicate it.  And

it's that gradual variance which I feel is -- was

appreciated by the court in the previous order.  However,

09:41AM defendants feel that it might be subject to exploitation

because without that qualification that it's gradual

variance, the word "vary" by itself doesn't necessarily

suffice.

THE COURT:  Okay.  All right.  Thank you for

09:42AM your argument, Mr. Dietrich.

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 27 of 49 PageID #: 1084
Claim Construction Hearing 5-18-2016

27

1          Mr. Egozi, do you want to offer anything on

2     that term before we hear from plaintiff?

3          MR. EGOZI:  No, your Honor.

4          THE COURT:  Okay.

09:42AM  5          MR. NI:  Thank you, your Honor.  You know, we

6     appreciate the court's preliminary construction on this.

7     We, you know, agree with the construction on it.  I'm

8     again unclear as to, you know, what defendants are saying

9     with the "gradually varying."

09:42AM 10          Defendants' counsel argued that -- you know,

11    in their footnote they're basically saying that the

12    measurable variable input can gradually vary but doesn't

13    have to.  So, if they're making the argument that it can

14    do something but doesn't have to, I don't understand why

09:42AM 15    we would insert the limitation in the construction for

16    the term.

17          THE COURT:  Well, you in your brief do refer

18    to passwords in effect, typing a word, as one possible

19    measurable variable input.

09:43AM 20          MR. NI:  So, I can clarify what we meant in

21    our briefing by that.  So, we're not saying that the

22    actual password itself is a variable -- is a measurable

23    variable input.  The password is the password.  It's

24    either the correct password or incorrect password.  The

09:43AM 25    specification provides an example where the timing

Case 2:15-cv-01100-JRG-RSP  Document 155  Filed 05/27/16  Page 28 of 49 PageID #: 1085
Claim Construction Hearing 5-18-2016

28

between the keystrokes could be a measurable variable

input.  For example, if I was to enter, you know, the

password "court" and I had paused certain periods between

the entering of keystrokes and those were outside of the

09:43AM  allotted parameters, that would be a measurable variable

input.  The password itself we're not saying has anything

other than being a distinct value.

THE COURT:  All right.  I think that's a

helpful clarification.

09:44AM  MR. NI:  And other than that, I -- you know,

we agree with the court that "discrete" does not add

anything additional to what's distinctly identifiable.

As the prior claim construction order pointed out, it's

always been distinguished what is measurably variable and

09:44AM  what is distinctly identifiable.  So, those separations

are already clear.  So, adding "discrete" to it doesn't

really help, you know, the construction at all for that

term.

THE COURT:  All right.

09:44AM  MR. NI:  Thank you, your Honor.

THE COURT:  Thank you, Mr. Ni.

Mr. Dietrich, if you want to respond, go

ahead.

MR. DIETRICH:  Yes, your Honor.  And just very

09:44AM  briefly.

Case 2:15-cv-01100-JRG-RSP  Document 155  Filed 05/27/16  Page 29 of 49 PageID #: 1086
Claim Construction Hearing 5-18-2016

29

09:45AM

1          I appreciate plaintiff's clarification on this

2    point.  However, I don't believe it's in line with what

3    they've shown in their briefing.  With respect to

4    briefing -- and again I can throw it on the Elmo to the

5    extent it would be helpful.  But they specifically say

6    that keystrokes are measurable signals, and then in the

7    very next sentence they say the keys and timing between

8    keystrokes are also variable because different characters

9    may be used.  So, to the extent that this was not what is

10   intended, it is what is stated in their briefing; and I

11   think under this construction it's reasonable to exploit

12   this current formation.

13          THE COURT:  As long as the court's opinion

14   notes that a -- a password being a series of keyboard

15   strokes is not in itself a measurable variable input,

16   what other issue would you have?

17          MR. DIETRICH:  At this time, your Honor, I

18   can't think of anything.  So, I would leave it to the

19   court.

20          THE COURT:  Okay.  Thank you.  I understand

21   the dispute.  I appreciate it.

22          MR. DIETRICH:  The next term, your Honor -- I

23   should say the next term that comes up would be

24   "signature."  As the parties have said, I believe the

25   parties are willing to agree to the beginning of the

Claim Construction Hearing 5-18-2016

30

proposed construction here, which is "at least one

transmission intended as" versus defendants' "a

transmission intended as."  However, defendants' position

with respect to the "unauthorized access" to a computer

09:46AM  would still be subject to dispute.

So, defendants feel that the patents in

general are very clear that signatures are utilized to

prevent unauthorized access to computers; and defendants

feel that we have a wealth of evidence on our side here.

09:47AM  For example, the title of the '078 patent, the primary

parent patent of all of these patents, is "User Selection

of Computer Login."  The abstract goes on to state

"Computer login may comprise any user-determined

submission."  Further, the patent goes on to describe

09:47AM  "Computer login traditionally consists of a user typing

in an account name."

Plaintiffs cannot and don't necessarily even

try to identify another noncomputer embodiment for the

asserted patents in their briefing.  Instead, plaintiff

09:47AM  actually goes on to acknowledge that each of these

patents is pertaining to the field of computer login by

user-determined submission.  This is not to say computer

and other access -- it's computer login by

user-determined submission.

09:48AM  This understanding is further confirmed by the

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 31 of 49 PageID #: 1088
Claim Construction Hearing 5-18-2016

31

1    claim language.  So, here we have the '078 patent, again

2    the first claim of the primary patent here, "A

3    computer-implemented method for creating a signature for

4    subsequent authentication."

09:48AM  5            Plaintiff's briefing, they go on to describe

6    that "a signature is created for subsequent

7    authentication."  The patents describe this

8    authentication process as receiving a submission,

9    validating, and then providing authorization.

09:48AM  10           The asserted patents then specifically

11   describe the purpose of that authentication which is

12   "Submission comprises one or more transmissions intended

13   for authenticating access to a computer or network of

14   computers."

09:48AM  15           I believe defendants have made clear in their

16   briefing that by limiting to "a computer," they also

17   intend for that to include multiple computers, as it is

18   an open term.  We're not trying to subtly kick out "a

19   network of computers."  To the extent that the court

09:49AM  20   feels it's more prudent to include "or a network of

21   computers," I believe defendants could agree to that.

22   However, every step of this evidence, every step of the

23   briefing, every portion of the patents talk about how it

24   is providing authentication to a computer.

09:49AM  25           THE COURT:  I understand your argument.

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 32 of 49 PageID #:  1089
Claim Construction Hearing 5-18-2016

32

"Signature," however, is a term that does not denote what
the use of it is going to be.  So, to build in this
limitation of "to a computer" requires some kind of
limiting language somewhere.  I understand that a

09:50AM  principal use -- the principal use probably of this is as
a computer login; but is there anything anywhere that you
can point to that excludes other uses, especially since
isn't there a definition in the specification for this
term that does not include a limitation of access to a

09:50AM  computer?

MR. DIETRICH:  I don't believe there is such a
definition, your Honor.  To the extent that there is --

THE COURT:  What I'm referring to is from the
'078 at column 3.  The bottom of column 3, as I recall.

09:51AM  MR. NI:  Yes, your Honor.  It's lines 65
through 66.

MR. DIETRICH:  Your Honor, I -- defendants
acknowledge this statement.  I don't believe that this
does anything to state that access can be granted to

09:51AM  anything besides a computer.  So, while it does say it's
designed to prevent unauthorized access, there's no
described embodiment beyond a computer.  There's nothing
that can be pointed to.  In fact, plaintiffs don't point
to anything in their briefing that could be used other

09:51AM  than this.

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 33 of 49 PageID #:  1090
Claim Construction Hearing 5-18-2016

33

1         So, while plaintiffs -- or while defendants

2    acknowledge this statement, at the very top of that same

3    column, the first -- the first passage says (reading)

4    submission requires one or more transmissions intended

09:52AM  5    for authenticating access to a computer or network of

6    computers.  So, I mean, every step of authentication of

7    access to this point has been limited to discussion of

8    computers.  So, to the extent that the patent owner

9    didn't include the word "to a computer" I don't believe

09:52AM  10   is necessarily indicative of any additional environment

11   which authentication could be used in.

12         THE COURT:  Well, what -- tell me what you're

13   concerned this signature will be used to read on if we

14   don't restrict it to a computer.

09:52AM  15        MR. DIETRICH:  Well, effectively, your Honor,

16   I believe it would be to be using it in the way that

17   plaintiffs are currently asserting it, which is to reach

18   handheld devices.

19         THE COURT:  Now, we've -- I've already

09:53AM  20   rejected your argument that a handheld device cannot be a

21   computer.  Is that the only real dispute here?

22         MR. DIETRICH:  I believe yes, your Honor; but

23   defendants respectfully are unwilling to concede on that

24   point.  So --

09:53AM  25        THE COURT:  I understand that.

Case 2:15-cv-01100-JRG-RSP Document 155 Filed 05/27/16 Page 34 of 49 PageID #: 1091
Claim Construction Hearing 5-18-2016

34

1          MR. DIETRICH:  -- defendants will preserve all

2    arguments.  And I think one of those arguments is that

3    "to a computer" should be limited to computer devices,

4    excluding handheld devices.

09:53AM  5          THE COURT:  All right.  That clarifies the

6    argument for me.  Thank you.

7          Mr. Egozi, anything separate on this term?

8          MR. EGOZI:  No, your Honor.

9          THE COURT:  All right.  Mr. Ni?

09:53AM 10          MR. NI:  Yes.  Thank you, your Honor.

11          I think this court has made the point clear

12    that -- and defendants made the point clear that, you

13    know, their concern is the handheld device; and that has

14    been rejected by the term "computer."  So, I think, as

09:54AM 15    counsel had said, they just weren't willing to concede on

16    leaving that term out of the construction.

17          THE COURT:  Well, while you're up there, tell

18    me:  Are you attempting to read this term "signature" as

19    precluding unauthorized access to anything other than a

09:54AM 20    computer the way you understand "computer"?

21          MR. NI:  At this point plaintiffs have not

22    done so.  Everything we've accused are -- do fall within,

23    you know, the court's preliminary construction for

24    "computer."

09:54AM 25          THE COURT:  Okay.

Case 2:15-cv-01100-JRG-RSP  Document 155  Filed 05/27/16  Page 35 of 49 PageID #:  1092
Claim Construction Hearing 5-18-2016

35

1          MR. NI:  But the term itself, as the court had

2     pointed out, in column 3:65 to 66 specifically defines

3     what a signature is; and, you know, we believe the

4     court's construction is consistent with that.

09:54AM    5          THE COURT:  All right.  Thank you, Mr. Ni.

6          MR. DIETRICH:  Your Honor, moving on now, I

7     believe the next three terms can really be sort of

8     treated as part of the same discussion unless the court

9     has different feelings.  I believe defendants' argument

09:55AM   10     and analysis is very similar for each of these.  So, for

11     purposes of streamlining the argument, I believe we can

12     do so unless --

13          THE COURT:  That's fine.  The three

14     "wherein" -- the first three "wherein" terms we're

09:55AM   15     talking about.

16          MR. DIETRICH:  That is correct, your Honor.

17          THE COURT:  All right.

18          MR. DIETRICH:  So, there's three key disputes

19     here between the parties.  The first is -- will be

09:55AM   20     addressed very quickly, and that's the proper legal

21     standard for indefiniteness.

22          The second is whether plain and ordinary

23     meaning exists for grammatically flawed clauses.

24          And then the third is whether, in light of

09:56AM   25     those grammatical errors, any correction or

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 36 of 49 PageID #:  1093
Claim Construction Hearing 5-18-2016

36

1    interpretation would be subject to reasonable debate.

2           So, the first point -- and again, defendants

3    will move through this quickly.  It appears that

4    plaintiffs applied the improper standard in at least

09:56AM  5    their opening brief.  I think the court is very clear on

6    what the proper standard is.  We'll move on quickly.

7           THE COURT:  I am familiar with the *Nautilus*

8    case.

9           MR. DIETRICH:  I would imagine, your Honor.

09:56AM  10          With respect to plain and ordinary meaning,

11   plaintiffs can't and ultimately don't deny that these

12   clauses are grammatically flawed.  We have here clauses

13   that on their face don't make sense, especially from a

14   facial standpoint but specifically within the realm of

09:56AM  15   patent claiming.  So, plaintiff, nevertheless, suggests

16   that there's no construction necessary and that these

17   would be easily understood.

18          Setting aside defendants' argument that they

19   wouldn't be reasonably or easily understood given the

09:57AM  20   grammatical flaws, defendants feel that plaintiff's

21   alternative constructions expose just how unclear these

22   really are.  So, what defendants have prepared here is a

23   reproduction of the claim language as it appears in the

24   claims in black; and defendants have then indicated in

09:57AM  25   red bolding the additional portions which would be added

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 37 of 49 PageID #:  1094
Claim Construction Hearing 5-18-2016

37

1    by plaintiff's alternative constructions.

2              Looking at this, this is not what one of

3    ordinary skill in the art would read when simply reading

4    "wherein creating said signature using recorded signals

09:57AM  5    from a plurality of signal types."  These are large,

6    extensive additions to the claim language which

7    plaintiffs ultimately are not including.  I mean, there's

8    large citations to the specification in support of the

9    plain and ordinary meaning; but there's no citation to

09:58AM 10    any portion of the specification in support of these

11    alternative constructions anywhere in the briefing.

12              Effectively what plaintiffs are attempting to

13    do is to get the court to rectify certain grammatical

14    errors here.  And again, you know, I don't believe the

09:58AM 15    court needs any briefing on when it is proper to include

16    revisions.  However, defendants' position is that these

17    revisions are not simply changing grammatical -- you

18    know, misspellings or something that would be facially

19    obvious.  These are broad, broad, bold inclusions of

09:59AM 20    additional language into the patents.

21              For example, taking a look at the first claim,

22    we have "wherein creating said signature based at least

23    in part upon at least a portion of said stored recording

24    comprises."  I can think of at least three disputes in

09:59AM 25    there.  Is it really "at least in part"?  Is it "upon at

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 38 of 49 PageID #:  1095
Claim Construction Hearing 5-18-2016

38

least a portion of said stored recording"?  And then most

glaringly, the use of the open transition phrase

"comprises" in each one of these.

        Again, defendants are unconvinced or

09:59AM  unpersuaded by plaintiff's use of these open transitional

phrases when it's equally plausible that the patent owner

might have intended to use semiclosed, "consisting

essentially of," or closed transition phrases,

"consisting of."

10:00AM         Again, defendants would respectfully argue

that any attempt to redraft these or assign any meaning

is not necessarily just to assign the proper meaning.  It

would be preserving validity of what are otherwise

indefinite and poorly drafted claims.

10:00AM         THE COURT:  You know, Mr. Dietrich, I

understand your arguments with the plaintiff's proposal;

but as I understand the court's function here, it is to

determine whether a person of ordinary skill in the art

would understand with reasonable certainty the scope of

10:00AM  this claim.  And when I read claim 17 of the '725 patent,

what I think a person of ordinary skill would immediately

conclude is that the "wherein" clause is talking about

"wherein creating said signature uses recorded signals

from a plurality of signal types."  It says "using" and I

10:01AM  understand that's awkward, but I don't think that a

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 39 of 49 PageID #:  1096
Claim Construction Hearing 5-18-2016

39

1  person of ordinary skill would have the slightest doubt

2  that what is claimed there is the use of a plurality of

3  signal types, whereas the independent claim above talked

4  about signal types for at least one.

10:01AM   5        MR. DIETRICH:  Yes, your Honor.  And that may

6  be the case, and defendants are willing to acknowledge

7  that.  However, I -- I suppose plain and ordinary meaning

8  could arguably be provided for some of these.  However, I

9  don't know if it rises to the level of reasonable

10:02AM  10  certainty which is taught or proposed by the *Nautilus*

11  case.  And, frankly, I believe, more glaringly --

12  understanding that the court is now headed in a direction

13  of plain and ordinary meaning, I think one of defendants'

14  primary concerns was modification of these terms in the

10:02AM  15  way proposed by plaintiffs.

16        THE COURT:  Well, I do intend in the order, in

17  the ruling, to address what we think -- how we think this

18  would be read consistently with what I've told you.

19        MR. DIETRICH:  Yes, your Honor.  And I believe

10:02AM  20  defendants are comfortable with that.  I -- or at least

21  resting on argument, having done -- having briefed these

22  issues in full and then presented our arguments to the

23  court.

24        THE COURT:  That's fine.  And I'm certainly

10:03AM  25  not asking you to waive your positions at all.

40

1          MR. DIETRICH:  Yes, your Honor.

2          THE COURT:  Okay.  I do understand your

3  concerns, though.

4          MR. DIETRICH:  And I will address the final

10:03AM  5  "wherein" clause separately.  I understand Mr. Ni might

6  have some comments here.

7          THE COURT:  Okay.  Mr. Egozi, anything on the

8  first three "wherein" clauses?

9          MR. EGOZI:  No, your Honor.

10:03AM 10          THE COURT:  Okay.  Thank you.

11          MR. NI:  Thank you, your Honor.  We appreciate

12  the court's understanding of the term.

13          While we're not certain at this point what the

14  court intends to state in their final opinion on what the

10:03AM 15  plain and ordinary meaning would mean, I think we do

16  propose that what we had set forth to articulate the

17  claims based on sort of the antecedent basis and based on

18  what is in the entirety of the claims are rather

19  representative of what we hope the court would intend to

10:04AM 20  put in their opinion on the definition.

21          THE COURT:  I think that what you've proposed

22  includes a fair amount of rewriting of the claim --

23          MR. NI:  Okay.

24          THE COURT:  -- that I don't think is within

10:04AM 25  the proper purview of the court on claim construction.

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 41 of 49 PageID #: 1098
Claim Construction Hearing 5-18-2016

41

1    Why should we interpret -- let's focus on

2  claim 17.

3        MR. NI:  Sure.

4        THE COURT:  Why does that introduce any other

10:04AM  5  limitation to claim 15 than "using the signals from a

6  plurality of signal types" as opposed to "at least one"

7  or "at least" -- well, it says "for at least one

8  user-selected device."

9        MR. NI:  I think the interpretation we had in

10:05AM 10  that -- in that claim 17 was just based on -- based on a

11  viewing of claim 15 in its entirety.  I do not -- I don't

12  disagree with the fact that the claim could be simplified

13  by just the term "using" as well.

14        THE COURT:  Okay.

10:05AM 15        MR. NI:  If the -- I think the --

16        THE COURT:  And I may have -- I'm looking now.

17  I may have -- let me just say I may have tied it to the

18  wrong part of claim 15.  I don't know.  But in any event,

19  what I'm thinking the limitation it introduces is the

10:05AM 20  "plurality of signal types."

21        MR. NI:  Right.  Sorry.  Yeah, I think I was

22  going the same direction there, your Honor.

23        So, the portion of claim 15 was actually

24  talking about creating a signature "based at least in

10:06AM 25  part upon at least a portion of said stored recording."

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 42 of 49 PageID #: 1099
Claim Construction Hearing 5-18-2016

42

1 So, because we believe the dependent portion on claim 17

2 follows that limitation of claim 15, that was the way we

3 had interpreted someone of ordinary skill in the art

4 would read that claim 17 limitation.

10:06AM 5           THE COURT:  Well, obviously it has to include

6 all of the limitations of claim 15.

7           MR. NI:  That's correct, your Honor.

8           THE COURT:  But in any event -- all right.  I

9 understand your argument.

10:06AM 10          MR. NI:  Okay.  And I think our arguments are

11 very similar for the other "wherein" terms as well.

12          THE COURT:  Okay.

13          MR. NI:  Except for the final term.

14          THE COURT:  Then we can move to the last

10:06AM 15 "wherein" clause.

16          MR. NI:  Okay.  So, your Honor, I'll stay up

17 here; and I'll go ahead and ask a question about the last

18 "wherein" clause.  So, it's unclear from the court's

19 preliminary construction what the clarification of the

10:07AM 20 claim language means when you're suggesting that the

21 recording literally comprises multiple input devices

22 rather than signals obtained from those devices.  Is that

23 suggesting that, you know, the recordings are not

24 actually signals, that they're -- actually I'm not quite

10:07AM 25 sure where the court is going with that construction

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 43 of 49 PageID #:  1100
Claim Construction Hearing 5-18-2016

43

1    language.

2              THE COURT:  Well, I'm trying to give effect to

3    the claim as written.  And I understand that that may be

4    a demanding limitation, but that's what it says.

10:08AM   5              MR. NI:  So, what the court is saying is is

6    recording literally is a number of physical and multiple

7    input devices?

8              THE COURT:  Yes.

9              MR. NI:  Okay.  All right.  Thank you, your

10:08AM   10   Honor.

11             MR. DIETRICH:  Your Honor -- and I apologize

12   profusely for jumping around here.  I would like to go

13   back just very quickly, if we could, to the three

14   "wherein" terms on the board here.

10:08AM   15             THE COURT:  Sure.

16             MR. DIETRICH:  So, the first one we've

17   addressed, claim 17.

18             The second one, however, is claim 12, "wherein

19   passively terminating said recording."  I believe --

10:08AM   20   while a plain and ordinary meaning might be able to be

21   assigned to 17 -- obviously defendants reserve their

22   objection to that, but it doesn't appear that the same

23   could be said of claim 12.  For example, it appears that

24   claim 12 is drastically changing what was intended by

10:09AM   25   dependent claim -- or independent claim 10.  In fact,

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 44 of 49 PageID #:  1101
Claim Construction Hearing 5-18-2016

44

1   it -- ultimately I -- I'm just unclear how to read this.

2   And I don't believe we necessarily need to get into the

3   depths of each one of these; but I will, I suppose,

4   properly reserve our objection to the plain and ordinary

10:09AM  5   meaning for each of these claims.  So, I'll just leave it

6   at that unless the court has additional questions.

7          THE COURT:  Well, I do understand that and

8   it's hard to give a succinct preliminary construction of

9   a claim that -- when we're going to expand upon what the

10:10AM 10   plain and ordinary meaning is in the ruling; and I -- so,

11   I understand your uncertainty about it.

12          MR. DIETRICH:  Yes, your Honor.

13          THE COURT:  And that's --

14          MR. DIETRICH:  And defendants acknowledge and

10:10AM 15   are willing to move on, your Honor.

16          THE COURT:  That's fine.  I'm not trying to

17   cut you off, but I will say that we intend to say more

18   about it than just "plain and ordinary."

19          MR. DIETRICH:  Yes, your Honor.

10:10AM 20          THE COURT:  Okay.

21          MR. DIETRICH:  With respect to the final

22   "wherein" clause here, we have "wherein said recording

23   comprises a plurality of user-selected devices."

24   Effectively, defendants' construction is that this is

10:10AM 25   indefinite.  However, in the alternative, defendants are

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 45 of 49 PageID #:  1102
Claim Construction Hearing 5-18-2016

45

1 willing to move forward with the proposed preliminary

2 construction that this should be interpreted literally.

3 However, I will touch on a few points with respect to

4 indefiniteness.

10:11AM 5         Aside from the arguments that we've already

6 briefed with respect to the previous "wherein" clauses,

7 there's an additional three arguments I'd like to address

8 here with respect to this particular clause.

9         First is that there appears to be a lack of

10:11AM 10 any proper antecedent basis for the term "recording."

11         The second, again, is whether plain and

12 ordinary meaning can exist for a grammatically flawed

13 clause.

14         And then the final is whether this clause

10:11AM 15 should be interpreted literally.

16         What we have here on the board is a

17 reproduction of independent method claim, including

18 various actions, various steps.  We've also reproduced

19 dependent claim 10 which includes the disputed clause.

10:11AM 20         As you look here, there's two independent and

21 separate acts of recording that are identified in the

22 body of the independent claim; and they don't appear to

23 be related because with the first it is "recording input

24 data at at least one signal type."  The second is

10:12AM 25 "affords recording a plurality of signal types."  These

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 46 of 49 PageID #:  1103
Claim Construction Hearing 5-18-2016

46

1   are not the same step.

2           So, looking down, it doesn't appear that there

3   can be assigned some proper antecedent basis.  Which --

4   which of these recordings are we drawing this to?  Which

10:12AM   5   step includes "wherein said recording comprises a

6   plurality of user-selected devices"?  It's simply --

7   we're left to guess, essentially.  And certainly I don't

8   believe that this would rise to the level of reasonable

9   certainty that the courts demand.

10:12AM   10          Again, I don't believe plaintiff can dispute

11  that this clause as written is grammatically flawed and

12  nonsensical.  Literally the phrase is "wherein said

13  recording comprises a plurality of user-selected

14  devices."  In other words, it's "wherein said method step

10:13AM   15  comprises a plurality of apparatuses."  Effectively this

16  is the equivalent of saying "wherein said sitting

17  comprises a plurality of chairs."  It's nonsensical.

18  It's gibberish.

19          Plaintiff's alternative construction here

10:13AM   20  doesn't clarify this here, and it still -- it relies on

21  the use of "recording" as a noun, as a physical object

22  which is capable of containing other objects or other

23  information.  So, by adding "wherein said recording

24  comprises signal types from a plurality of user-selected

10:13AM   25  devices," all we've essentially done is double down on

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 47 of 49 PageID #:  1104
Claim Construction Hearing 5-18-2016

47

1    the indefiniteness.  It's saying "wherein said sitting

2    comprises cushions from a plurality of chairs."

3    Effectively even the alternative construction proposed by

4    plaintiffs add no more specificity or no more certainty

10:13AM   5    to this disputed term.

6              And then very briefly, your Honor, to the

7    extent that defendants' proposal is not accepted,

8    defendants alternatively argue that the court should

9    construe this term literally as it's proposed in the

10:14AM  10    preliminary claim constructions, understanding that that

11    would be a demanding task.

12              THE COURT:  All right.  Thank you,

13    Mr. Dietrich.

14              MR. DIETRICH:  Yes, your Honor.

10:14AM  15              THE COURT:  Mr. Egozi?

16              MR. EGOZI:  Thank you.  Nothing further, your

17    Honor.

18              THE COURT:  All right.  Mr. Ni?

19              MR. NI:  Nothing further, your Honor.

10:14AM  20              And I think we'll just look to see the court's

21    final construction.  We're not going to -- you know,

22    while we -- sorry, your Honor.  While we do think there

23    is a possible way of, you know, rehabilitating the

24    literal claim language on the last claim, you know, it's

10:14AM  25    not -- we're not asking the court to do that if the court

Claim Construction Hearing 5-18-2016

48

1  is inclined to construe it actually literally.

2          THE COURT:  What do you say to the antecedent

3  basis question that Mr. Dietrich just raised about

4  "recording"?

10:15AM  5          MR. NI:  I guess I don't see the concern with

6  that.  The term "recording" was -- I thought the term

7  "recording" was present in the claim.

8          THE COURT:  It is present in two places, two

9  limitations of claim 9, the second limitation and the

10:15AM  10  fourth limitation, I guess.

11          MR. NI:  I think we're willing to concede

12  that, you know, under the literal definition of the

13  claim and -- you know, this is, I mean, not a claim that

14  the plaintiffs would go forward on.

10:16AM  15          THE COURT:  Okay.  I understand what you're

16  saying.

17          MR. NI:  We're not going to be impractical

18  about that.

19          THE COURT:  Very good.  Are there other

10:16AM  20  arguments that any party wants to offer on any of these

21  claims?

22          MR. NI:  No, your Honor.  Thank you.

23          MR. DIETRICH:  Not at this time, your Honor.

24          MR. EGOZI:  No, your Honor.

10:16AM  25          THE COURT:  All right.  Well, gentlemen, I

Case 2:15-cv-01100-JRG-RSP   Document 155   Filed 05/27/16   Page 49 of 49 PageID #:  1106
Claim Construction Hearing 5-18-2016

49

1    appreciate your arguments.  They have been very helpful,

2    and I will endeavor to get a claim construction ruling

3    out promptly.  So, thank you; and we're adjourned.

4              (Proceedings adjourned, 10:20 a.m.)

5

6

7    COURT REPORTER'S CERTIFICATION

8              I HEREBY CERTIFY THAT ON THIS DATE, MAY 25,

9    2016, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

10   RECORD OF PROCEEDINGS.

11

12

13                        /s/
                          TONYA JACKSON, RPR-CRR

14

15

16

17

18

19

20

21

22

23

24

25